Giles Caldwell *et al. d.b.a.* Al's Super Calso Station *vs.*

Chester I. Boss *d.b.a.* Boss Express Co.

Giles M. Caldwell *et al. d.b.a.* Al's Super Calso Station

*vs.* Chester I. Boss.

JANUARY 28, 1957.

Present: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

FLYNN, C. J. These two actions in assumpsit originally were brought in the sixth judicial district court as separate cases between the same parties on a book account containing many transactions. A judgment by default was entered in each case, but later these judgments and executions thereon were vacated and both cases were reinstated for trial. Thereafter by submission a decision for the plaintiffs in each case was entered and defendant appealed therefrom to the superior court.

Before trial in that court and over defendant's objection, plaintiffs' motion to increase the ad damnum and to file an amended declaration and an amended bill of particulars was granted on condition that the second case be discontinued and all alleged claims on the account be tried in one action, which apparently was done. Subsequently at the trial of the remaining case before a justice of the superior court sitting without a jury a decision was rendered for plaintiffs in the sum of $796. However, defendant has prosecuted a bill of exceptions in each case which, though incorrectly numbered, apparently relate to the decision and to certain rulings in the case actually tried.

It appears from the evidence that originally Giles M. Caldwell and James G. Silva were partners doing business as Al's Super Calso Station; that after the first case was brought by writ dated May 28, 1952, James G. Silva died and his widow as administratrix of his estate was substituted as a party plaintiff; and that defendant had an account with the plaintiffs and admittedly owed some money for gas, oil and labor provided for and expended upon certain of defendant's trucks.

The evidence for plaintiffs was presented by a former partner of the station who was acting as their bookkeeper. Original sales slips signed in duplicate by the driver of the particular truck thereby serviced constituted the basis of plaintiffs' bookkeeping system. Monthly statements were made up from these slips and, together with the correspond-

ing duplicate originals signed by the respective drivers, were furnished to defendant. The plaintiffs by such original evidence proved all the items in the amended bill of particulars.

The defendant admits receiving some of the statements as they appear in the amended bill of particulars but claims he did not receive all of them. He further admits that he had made a payment of $300 on the account after these actions had been instituted. While he sought by implication to cast some doubt as to the employment of certain of the drivers who had signed the slips, he did not specifically refute their employment and right to sign for servicing the trucks. Nor did he deny the ownership and registration of the trucks involved and he produced no records or books to deny the facts in issue.

During the trial it also appeared that defendant's trucks were mortgaged to the Industrial Trust Company, a Rhode Island banking corporation; that such mortgagee had started foreclosure proceedings thereon; that three of the trucks were held by plaintiffs under a common-law lien for work, labor and materials provided and performed thereon; and that to facilitate prompt repossession of them under a replevin action commenced by the bank, it had voluntarily paid to plaintiffs $200 and had charged that sum against defendant under the mortgage. However, no credit for that amount was given to defendant by plaintiffs on their account with him.

The defendant's first important contention under the pertinent bill of exceptions is that the trial justice erred in allowing plaintiffs to increase the ad damnum and to file an amended declaration and an amended bill of particulars in the first case so as to litigate therein all claims against defendant. He argues that such action was based on one indivisible account; that it could not be split into two parts; and that by merely bringing a suit on one part thereof plaintiffs were barred from bringing another suit on any

182

other portion of the same account, citing *Corey* v. *Miller*, 12 R. I. 337, *Potter* v. *Harvey*, 34 R. I. 71, and *Grady* v. *Siravo*, 52 R. I. 233.

We have examined these cases and in our judgment the court in none of them went so far as to hold that even without special pleading the mere commencement of an action on one part of an open account like this automatically and completely bars the addition and consolidation of other items of the account in the one action. If a *judgment* had been entered in the first case, it would have barred the second action provided the account was found to be indivisible, or provided there was no evidence of a peculiar course of dealings indicating a contrary intent so as to take the case out of the general rule. But defendant overlooks the fact here that the judgments entered by default in the two cases under consideration were vacated and that payment of $300 on the full account was made at the time. Moreover, there is a question whether the account was indivisible or whether it was composed of separate transactions under a course of dealings which resembles the severable claims for services appearing in the case of *Grady* v. *Siravo, supra*. We are of the opinion that in the circumstances the trial justice did not err in holding that the mere bringing of the first action did not deprive that court of jurisdiction under general laws 1938, chapters 509 and 519, to permit an amendment as to the ad damnum, declaration and bill of particulars, thus in effect consolidating all the claims in one action.

The defendant further contends that the trial justice erred in permitting evidence of the original sales slips to be introduced. There is no merit in this contention. The method of bookkeeping was described and contained no books of account as such. Under the practice the original slips signed in duplicate were the bases of the monthly invoices or statements that were sent to defendant. They constituted the best evidence and they were not at variance

with the bill of particulars. The defendant claimed no surprise, and an extended recess in the trial offered full opportunity to examine the slips and to prepare his defense. Whether the statements and corresponding signed original duplicate slips were all furnished to defendant was a question on which there was conflicting evidence. The trial justice decided in favor of plaintiffs in an action tried without a jury. His decision will not be disturbed unless it is clearly wrong. From our examination we cannot say that he misconceived or overlooked the evidence, or applied the law erroneously, so far as the decision relates to the charges in the account against defendant.

The defendant's principal claim, however, relates to the failure of the trial justice to allow as a credit the $200 admittedly paid by the mortgagee bank to the plaintiffs when the bank was repossessing the three trucks held by plaintiffs under an alleged mechanic's lien. The trial justice refused this credit stating: "This was in a separate case for a different consideration and had no bearing on the claim now being made, and the defendant is not entitled to this credit on plaintiff's claim."

Nominally it would appear to be such a transaction but in the circumstances of record we do not think that it was entirely *res inter alios acta,* which is the substance of the trial justice's ruling. Both the bank and the plaintiffs had a direct interest in defendant's three trucks which were involved in plaintiffs' account in the instant action. If it were not for the alleged services in relation to these trucks, which also resulted in corresponding charges in the account with defendant, plaintiffs would have had no lien or possession upon which to justify any defense to the bank's replevin action. Nor would they have ground for holding the trucks or for receiving payment from the bank to surrender them. On the other hand the bank as mortgagee not only had a prior right to possession of those trucks but also was authorized by the defendant under the mortgage to protect

its security, and the payment to plaintiffs of $200, which thereupon was charged by the bank to the defendant under the mortgage, was not objected to by him. We are of the opinion that in all the circumstances appearing in the record the respective interests were basically related and that such payment for and charge to the defendant were sufficiently relevant to his indebtedness to the plaintiffs in connection with the account in issue as to make the evidence admissible and to warrant a credit thereof to the defendant in the decision.

We have examined the other exceptions and contentions of the defendant and they are without merit.

The defendant's exception to the decision is sustained, all other exceptions are overruled, and on February 4, 1957 the plaintiffs may appear before this court to show cause, if any they have, why the case of Giles Caldwell et al. d.b.a. Al's Super Calso Station v. Chester I. Boss d.b.a. Boss Express Co., Ex. No. 9647, should not be remitted to the superior court with direction to enter judgment on the decision as reduced by the credit of $200.

*Harold H. Winsten,* for plaintiffs.

*Raymond A. LaFazia,* for defendant.