JOHN KLANIAN *vs.* NEW YORK LIFE INSURANCE COMPANY.

JUNE 9, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of assumpsit on two life insurance policies containing provisions for waiver of premiums and payment of monthly benefits in case of disability. After a jury trial in the superior court the trial justice directed a verdict for the plaintiff and refused to direct a verdict for the defendant. Defendant excepted to the denial of its motion for a directed verdict and also to the granting of the plaintiff's motion. The case is here on these exceptions and fourteen other exceptions which the defendant took during the trial. In its brief and argument the defendant segregated these exceptions into three separate groups. We shall so consider them in this opinion.

The controverted issues arise from the following undisputed facts. The two policies in question were issued to the plaintiff upon his written application. The first policy No. 9876096, in the amount of $2000, was issued on June 1,

1927; the second, No. 10874576, in the amount of $3000, was issued on December 3, 1929.

Policy No. 9876096 is involved herein only because of a plea in setoff which the defendant filed in addition to the general issue. Defendant admits that such policy is in all respects in full force and effect and that plaintiff's right to disability payments thereunder is not in question here on its exceptions. All references hereinafter to policy provisions will, therefore, be to the second policy No. 10874576.

This policy provided for waiver of premium and the payment to the plaintiff of $10 a month for each $1000 of insurance upon receipt of proof that he had become totally and permanently disabled after the insurance took effect and before the anniversary of the policy on which his age at his nearest birthday was sixty. In 1935 the plaintiff made satisfactory proof of disability under such provision. From May 15, 1935 to May 15, 1940, inclusive, the defendant waived the premiums and made the payments for disability as provided by the policy. It did not make the payments which were due on June 15, 1940 and July 15, 1940, although the defendant admitted that the plaintiff was still disabled within the meaning of the policy.

Defendant's reason for not making such payments is set out in the following letter which was received by the plaintiff on August 2, 1940:

"July 30, 1940.

Mr. John Klanian,
   31 Whipple Street,
     Providence, Rhode Island.
      In re: Policy #10874576—your life
"Dear Sir:

New York Life Insurance Company hereby notifies you that it elects to and does hereby rescind the provisions for disability and double indemnity benefits contained in the above numbered policy because it has just recently learned that you failed to disclose to it in your application for the above numbered policy that prior to the date thereof you suffered a serious ailment or disease or ailments or diseases on account of which you

consulted, were examined and treated by physicians and on account of which you received treatment at the Charles V. Chapin Hospital. The Company tenders to you, by its check to your order for $172.41 enclosed herewith, return of the amounts received by it on account of the premiums paid for said benefits with interest thereon from the dates of receipt to the date of this tender and the Company further offers to do whatever else, if anything, it ought to do for the purpose of such rescission.

By reason of the rescission of said provisions for said benefits the semi-annual premium is reduced to $86.34.

You are further advised that the Company recalls its waivers of the semi-annual premiums due June 3, 1935 to December 3, 1939, inclusive, and demands that you at once remit the ten semi-annual premiums now in default totaling the sum of $863.40 and that you repay to the Company the sum of $1830.00, the amount of the monthly disability income benefits paid to you from May 15, 1935 to May 15, 1940, inclusive.

Very truly yours,
New York Life Insurance Company,
By       W. F. Rohlffs
Secretary."

The check referred to in the above letter bore on its face in the upper left-hand corner the following recital: "Refund premiums with interest a/c rescinded disability and double indemnity on Pol. No. 10874576—Klanian." Plaintiff admitted that this recital was on the check when he received it but he testified that he did not understand it or the letter. Nevertheless he cashed the check on August 2, 1940 and it was not until the next day that he learned from his insurance agent, an employee of the defendant, what the letter and the writing on the check meant. Thereupon plaintiff, being unable either to read or write, had his daughter write the following letter to the defendant:

"August 3, 1940                    N. Y. Life Insurance
Co.

Dear Sirs:

We received your letter with $172.41 check included but we did not understand the letter which you have

sent us. We kept the check over two days and turned it in without understanding the meaning of the letter. Our agent H. V. Siranossian came yesterday afternoon and explained the meaning of the letter and *we do not agree with it*. We have all ready the amount to refund or replace the check if it is necessary.

Yours Sincerely,
Mr. John Klanian
John Klanian."

Plaintiff thereafter consulted counsel who, on August 9, 1940 wrote to the defendant to the effect that the plaintiff was an illiterate man; that he did not understand defendant's letter of July 30, 1940 or the recital on its check; that he did not agree to any rescission of his policy and that he was ready to return the amount of the check to the defendant. Later, on August 16, 1940, counsel mailed their certified check for $172.41 to the defendant together with a letter in which they advised the defendant that they had brought suit for the recovery of disability payments which were due according to the policy. Defendant returned this check by letter of August 21, 1940 and indicated therein that it would litigate the matter by retaining counsel to represent it in this state.

The policy contains the following incontestability clause: "This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits." Defendant contends that under this clause the disability insurance is excepted from incontestability and that it is entitled to rescind that portion of the policy on proof of misrepresentations made by the plaintiff in his written application for the policy even though more than two years have elapsed since the date of issue of the policy. Under this contention the defendant argues that the trial justice erred in not allowing it to introduce evidence of such misrepresentations. This contention is made in support of exceptions 1, 2, 3, 4, 11, 12 and 14 which defendant has grouped under its first point.

Defendant further contends that its letter and check of July 30, 1940 coupled with plaintiff's conduct in indorsing and cashing such check constitute, as a matter of law, a mutual rescission of the disability provisions of the policy. Under this contention it argues that it was error for the trial justice to admit into evidence testimony of the plaintiff as to his ignorance of the meaning of the letter and the check, and of his lack of intention to rescind. This point is raised under defendant's second group of exceptions, namely, 5, 6, 7, 8, 9, 10 and 13.

We shall now consider the first group of exceptions. It is clear that those exceptions stand or fall on the answer to the following question: "Does the incontestability clause of the policy by its terms expressly except in its entirety the disability portion of the policy?" This question has not hitherto arisen in this court under this particular type of policy written by the defendant or under any other policy with an essentially like clause. However, it has arisen in a considerable number of cases in other jurisdictions, particularly in the federal courts.

The question was answered in the negative in *Penn Mutual Ins. Co.* v. *Kelley*, 88 N. H. 351; *Stroehmann* v. *Mutual Life Ins. Co.*, 300 U. S. 435; *Coodley* v. *New York Life Ins. Co.*, 9 Cal. 2d 269; *Malloy* v. *New York Life Ins. Co.*, 103 F. 2d 439; *Ostroff* v. *New York Life Ins. Co.*, 104 F. 2d 986; *New York Life Ins. Co.* v. *Truesdale*, 79 F. 2d 481; *New York Life Ins. Co.* v. *Kaufman*, 78 F. 2d 398; *Thompson* v. *New York Life Ins. Co.*, 9 F. Supp. 248; *Blair* v. *New York Life Ins. Co.*, 40 Cal. App. 2d 494; *New York Life Ins. Co.* v. *Yerys*, 80 F. 2d 264; *Horwitz* v. *New York Life Ins. Co.*, 80 F. 2d 295; *Braun* v. *New York Life Ins. Co.*, 115, P. 2d 880 (Cal.); *Mutual Life Ins. Co. of New York* v. *Childs*, 64 Ga. App. 658; *Pacific Mutual Life Ins. Co.* v. *Alsop*, 191 Ind. 638; *Ness* v. *Mutual Life Ins. Co. of New York*, 70 F. 2d 59; *Mutual Life Ins. Co. of New York* v. *Markowitz*, 78 F. 2d 396.

The following cases answer the question in the affirmative: *Terry* v. *New York Life Ins. Co.*, 104 F. 2d 498; *Ruhlin*

v. *New York Life Ins. Co.*, 93 F. 2d 416; *Steinberg* v. *New York Life Ins. Co.*, 263 N. Y. 45; *Pyramid Life Ins. Co.* v. *Selkirk*, 80 F. 2d 553; *Equitable Life Assur. Soc.* v. *Deem*, 91 F. 2d 569; *Connecticut General Life Ins. Co.* v. *McClellan*, 94 F. 2d 445; *New York Life Ins. Co.* v. *Bonasso*, 121 W. Va. 143; *Smith* v *Equitable Life Assur. Soc.*, 169 Tenn. 477; *Equitable Life Assur. Soc.* v. *Saftlas*, 38 F. Supp. 708.

As far as we are aware no court which has once taken a position on this question has afterward in any later case reversed itself. See 94 A. L. R. 1135 and 121 A. L. R. 1437. The cleavage of authority is deep and seems unlikely to be reconciled.

In the face of this division of authority the plaintiff argues that there can be no question that the clause, at the very least, is ambiguous and therefore should be construed most strongly against the insurer and in favor of the insured. He argues that where so many courts have differed over the true meaning of the language which the draftsman of the instrument has employed such fact is strongly persuasive that there must be some ambiguity therein, and for this view he cites *Newberger* v. *New York Life Ins. Co.*, 56 R. I. 442. In that case we looked at the language of the policy before us and concluded that it was not free from ambiguity and then suggested that the divergent views of two courts which had previously considered the same language tended to support such a view. To this extent the instant case presents a similar situation but we do not think it is necessary to rest our conclusion here solely on ambiguity. On the contrary, we are of the opinion that the language of the incontestability clause under review fairly and reasonably construed provides that the entire policy shall be incontestable after two years from its issue, except for failure to pay a premium and except that in case of a claim based upon the disability clause or the double indemnity benefits clause a contest may be made which is based on any condition or provision in such clause.

For our part we see no need to burden this opinion with any discussion of our reasons for this construction especially in view of the thorough manner in which other courts have already discussed the question. All that can reasonably be said to show the true construction of the clause has, in our opinion, been said. After carefully weighing the conflicting authorities it seems to us that the cases which have adopted the construction which we favor are supported by the better reasoning, and are most consistent with certain well-established rules of construction applicable to instruments drawn by one of the parties to a contract. We find, therefore, that the trial justice did not err in excluding evidence of plaintiff's alleged misrepresentations in his written application. Exceptions 1, 2, 3, 4, 11, 12 and 14 are accordingly overruled.

Defendant's second group of exceptions rests upon its contention that the conduct of the plaintiff in cashing the defendant's check of July 30, 1940 raises an implication of a mutual rescission of the disability portion of the insurance as a matter of law. Therefore, it argues, no testimony of the plaintiff that he was ignorant of the import of his conduct was admissible because such testimony was, in effect, designed to contradict an agreement in writing which would be a violation of the parol evidence rule. In support of this contention defendant cites *Conway* v. *Equitable Accident Co.*, 27 R. I. 467.

We do not think the *Conway* case is applicable to the circumstances of the instant case. The writings here do not of themselves set out in full a clear and definitive contract to which the plaintiff can reasonably be said, as a matter of law, to have completely and unconditionally given his assent in writing. There was such a contract in the *Conway* case. In that case there was a clear and simple release attached to a draft. On the draft was a specific warning that it would be paid only if the release was signed and not detached. In addition the draft was enclosed with a letter which clearly stated that the draft was in full settlement of plaintiff's claim. There were no other conditions mentioned. Plaintiff

could not read or write and asked another person to act for him, and later tried to claim that this person was also ignorant of the meaning of the release which he signed on behalf of the plaintiff. Although this court refused to accept such testimony in contradiction of the release it is significant that it said, if for any reason plaintiff could be permitted to avoid his release and bring suit under the policy, "it would only be after he had returned the money received by him" at the time of the supposed settlement, but the court added that no such reason appeared.

The defendant's writings here proposed a contract to rescind that is coupled with the performance of other conditions besides the signing and cashing of the defendant's check. Indeed, those conditions and the assertion of the defendant in its letter of its right to rescind seem to amount to a claim of unilateral right of rescission by the defendant and an exercise of such right coupled with a demand for restitution by the plaintiff of benefits theretofore paid to him. Such a claim, however, depended for its validity upon defendant's contention that the disability insurance was excepted from the incontestability clause. Our rejection of that contention leaves defendant's claim without any support.

But if, as defendant now argues, its letter of July 30, 1940 should be considered in the nature of an offer for mutual rescission, the intention of the plaintiff in cashing its check becomes a proper matter of inquiry in order to determine whether or not there was in reality any meeting of the minds of the parties on all the conditions of the proposed rescission as set out in that letter. Defendant argues that an express agreement is not necessary to prove mutual rescission and that it may be inferred from the conduct of the parties. In making this argument defendant inferentially admits that it has no written agreement such as existed by force of the writings in *Conway* y. *Equitable Accident Co., supra,* and thus its objections to testimony in explanation of plaintiff's conduct tending to show his true intention are without merit.

Exceptions 5, 6, 7, 8, 9, 10 and 13 are accordingly overruled.

We shall next consider exceptions 15 and 16. These exceptions are respectively to the denial of defendant's motion for a direction and to the granting of plaintiff's motion. In support of exception 15, defendant cites *Peterson* v. *New York Life Ins. Co.*, 185 Minn. 208, *Warren* v. *New York Life Ins. Co.*, 40 N. M. 253, and *Kincaid* v. *New York Life Ins. Co.*, 66 F. 2d. 268, as instances of a set of facts similar to those in the instant case on which it has been held as a matter of law that there arose a mutual rescission of the contract between the parties. In the two first-cited cases, it is true that there was a letter and a check substantially like those in the case at bar, and that in each case the check was cashed, but there the similarity to the case at bar ends.

In the *Peterson* case the plaintiff waited a month after cashing the defendant's check before he took action, and even then he offered no explanation of his conduct nor did he make any claim that he was unable to understand defendant's letter.

In the *Warren* case the conduct of the plaintiff was even more inexplicable. Six months elapsed before the check was cashed and thereafter for three years plaintiff did not question the right of rescission which defendant had asserted in its letter.

The facts in the *Kincaid* case are least in point of the three cited cases. There plaintiff held defendant's check three months while he corresponded with defendant over its right to rescind. He then cashed the check without any further objection. After his death his widow brought an equity suit for an accounting. The court said that the suit was no more than an action at law, "in equitable dress", to recover on the policy, and it held that the cashing of the check was "a deliberate election to take the money, with such consequences as followed therefrom."

Without disagreeing with the application of the principles governing mutual rescission to the facts of those cases, we are nevertheless of the opinion that they are not applicable

to the facts of the case at bar. Mutual rescission rests upon intention; it depends both upon the acts of the parties and the intention with which those acts are done. *Dooley* v. *Stillson,* 46 R. I. 332. Whether or not the intention to rescind was present at the time the acts were done is ordinarily a question for the jury, but it may become a question for the court where the facts are admitted or clearly established. 2 Black on Rescission and Cancellation (2d ed.) § 534, p. 1312.

In the instant case there was a clear conflict in the evidence as to what was the intention of the plaintiff in cashing the defendant's check. If it were not for the letter which the plaintiff sent to the defendant on August 3, 1940 explaining that he cashed the check in ignorance of its import, denying that he thereby intended to agree to the terms of rescission contained in the defendant's letter of July 30, 1940 and offering to return the amount of the check, there might be some merit in the defendant's contention that there was nothing to go to the jury and that defendant was entitled to a direction of a verdict as a matter of law. But in the existing state of the evidence it would have been improper to direct a verdict for the defendant and, therefore, the trial justice ruled correctly in denying defendant's motion. Exception 15 is accordingly overruled.

Defendant contends under its sixteenth exception that it was error for the trial justice to grant the plaintiff's motion to direct a verdict in his favor, and especially after defendant's motion had just been denied. In pressing this contention the defendant argues that there is ample evidence in the record from which the jury could reasonably have inferred that there was a completed rescission notwithstanding the explanation of the plaintiff. On the contrary, the plaintiff contends that there could be no valid rescission of the disability portion of the insurance after the expiration of the contestable period; and that defendant's attempted rescission was entirely without right and ineffective as a matter of law.

Such contentions may have merit in the case of a unilateral rescission claimed as of right by the rescinding party, but they have none in a case of mutual rescission as defendant claims hereunder. Plaintiff seems to recognize this as he says at one point in his brief: "Such action, (rescission) without warrant in the policy, could only become effective if insured completely acquiesced in a mutual agreement supported by a valid consideration." That, it seems to us, is the question which is raised by the evidence. Defendant contends that the conduct of the plaintiff in cashing the check raises an inference of such agreement and the plaintiff, by his testimony, seeks to avoid such inference by explaining that his conduct was due to his ignorance of the import of defendant's letter and the recital on its check.

On plaintiff's motion for a directed verdict it was the duty of the trial justice to view all the evidence and the reasonable inferences therefrom most favorably to the defendant and to deny the motion if, on any reasonable view of the evidence, the jury could have found a verdict for the defendant. From our examination of the transcript we cannot agree with the plaintiff that the evidence was undisputed on the question of a rescission by agreement. In order to do so it would be necessary for us to accept at its full face value plaintiff's explanation as to why he cashed the check and to declare, as a matter of law, that such explanation overcame the inference arising from his conduct. We are of the opinion that such a conclusion would be a clear invasion of the province of the jury. It is for the jury in such a case to say whether or not plaintiff's explanation overcame the reasonable inference arising from his conduct. The trial justice, therefore, erred in directing a verdict for the plaintiff.

Defendant's sixteenth exception is sustained, all of its other exceptions are overruled, and the case is remitted to the superior court for a new trial.

*Jasper Rustigian, Perkins, Higgins & McCabe, James A. Higgins,* for plaintiff.

*Haslam, Arnold & Sumpter, Harry A. Tuell, Walter D. Harris,* for defendant.