LOUIS H. YARRUT, Judge ad hoc.
Plaintiff paid a claim to one of its insureds who suffered damage in an automobile collision with the minor son of Timothy L. Harrington and obtained the customary subrogation. Plaintiff then sued the older Harrington on its subrogated claim and obtained ' judgment against him by default in another court. When examining Harrington as a judgment debtor under the appropriate statute, plaintiff learned, for the first time, that the defendant had at one time issued an automobile public liability policy to Harrington. This direct action was brought under the subrogated claim.
Defendant admitted having issued such a policy to Harrington, but pleaded that the policy had been voluntarily surrendered by Harrington for cancellation by mutual consent two days before the collision which resulted in the damage above set forth.
The District Judge rendered judgment for plaintiff and gave as his reason that *504 Harrington had surrendered the policy in ignorance of his rights, so there had been no “meeting of the minds.” Defendant has taken this appeal.
The undisputed facts are these: On November 4,' 1954, defendant issued an automobile liability policy to Harrington under the belief that Harrington was the principal user of the automobile. Upon learning the automobile was being used principally by Harrington’s minor son in the son’s business, defendant had its agent, Donald Hin-gle, pick up the policy for cancellation because it no longer desired to remain on the risk. On November 16th, Hingle called the Harrington home on the telephone and advised that he desired to pick up the policy for cancellation, speaking to Mrs. Harrington, and gave her the reason therefor. Hin-gle followed this telephone call on November 18th by calling at the Harrington home and again explained his reasons why his company wanted the policy; whereupon Harrington’s son procured the policy, and turned it over to Hingle in the presence of his father, Timothy L. Harrington, who made no protest over the surrender of the policy to Hingle. Hingle, in turn, delivered the policy to defendant and it was can-celled. Two days later (November 20th) Harrington’s minor son was involved in an accident and caused damage to one of plaintiff’s assureds. Plaintiff paid the loss and became subrogated to the claim. No report of the accident was ever made to defendant by Harrington or others until this suit.
The only issue then is one of fact— whether or not the policy was surrendered for cancellation when it was delivered to Hingle as the agent of defendant at Timothy Harrington’s home on November 18th, just two days before young Harrington had the accident.
The policy permits either party to cancel by giving written notice not less than five days of the date the cancellation is to become effective. However, it is well settled that either insurer or insured may waive the benefit of this provision. See Fisher v. Globe & Rutgers’ Fire Insurance Co., 147 La. 984, 86 So. 417; Kelsea v. Phoenix Insurance Co., 78 N.H. 422, 101 A. 362; Klanian v. New York Life Insurance Co., 68 R.I. 126, 26 A.2d 608, 68 R.I. 262, 27 A.2d 338, 152 A.L.R. 87; Hi-Grade Oil & Gas Co. v. United States Fidelity & Guaranty Co., 93 W.Va. 448, 117, S.E. 157.
LSA-Civil Code Article 11 provides that,, in all cases, one can renounce what the law has established in his favor, when the renunciation does not affect the rights of others, and it is not contra bonos mores.
There is neither charge nor evidence that Hingle misled, defrauded or obtained the policy under false pretenses, or for any reason other than its prompt cancellation. It was clearly stated to Harrington that the company no longer wanted to remain on the risk and Harrington well understood it as per the answers to the following cross-questions :
“Q. Now, Mr. Harrington, I am a little bit confused just how this policy was picked up. Will you tell us again, in your own words, how it came about? A. Someone called my wife on Tuesday and told her they would be by to pick the policy up. Didn’t make any specific time. Thursday when I got home from work this agent was there. When I walked in the house he and my youngest ■ son was in there. The youngest son gets up and goes in the back and picks up the policy and brings it in there to him and hands it to him.
“Q. You saw this? A. Yes.
“Q. Did you make any objection to this ? A. I asked him what it was all about.
“Q. And what did he say? A. He said, ‘You know how these insurance companies are, they tell me to go and pick up a policy, and I have got to do it.’
“Q. And what did you say? A. I said, ‘it puts me in a spot.’ I didn’t have any time between where I could *505 :get insurance somewhere else, where if I had taken my own recommendation I would never have gotten that policy ■of yours. I would have taken out Allstate that I intended to to start with.
“Q. The policy was picked up Thursday, in the afternoon, you say? A. In the afternoon.
. “Q. What about Friday? Did you ■make an effort to get insurance on Friday? A. Well, I worked Friday. .1 worked Friday.
* * * * *
“Q. Did you ever report the accident to the Travelers Insurance Company, the particular accident upon which you were sued? A. No; and I figured because you picked it up— it messed me up so I didn’t know what to do.”
Counsel for plaintiff make two contentions: (1) That the policy was surrendered by Harrington for cancellation at the end of five days and the accident happened within the five days, hence it was in full effect; and (2) That Hingle, a salesman or solicitor, was not authorized to make the cancellation.
To the first contention, the answer is sim'ply that, if defendant intended to remain liable for five days, it could have accomplished the cancellation by giving written notice by mail. The fact that an accident "happened two days after the policy was surrendered by Harrington, eloquently .•shows the wisdom and foresight of defendant’s action in obtaining prompt surrender and cancellation.
With reference to the second contention, it is true that the agent himself could not ■cancel the policy, but he was acting under direct authority of his principal (defendant) which accepted and cancelled it.
Plaintiff relies heavily upon, but can get no consolation from, the case of Fisher v. Globe & Rutgers’ Fire Insurance Co., 147 La. 984, 86 So. 417, cited supra, because that case squarely holds that written notice can ibe waived, and it is always a question of fact whether there was a voluntary waiver and cancellation. It is true that, on rehearing in the Fisher case, the Court held that one of the two policies involved had not been cancelled because it had been sent in error.
The fact that Harrington paid no premium whatsoever either on a pro rata or short-rate basis and no premium was ever demanded of him; that when his son was involved in the accident he did not notify defendant, nor was defendant notified when he was sued by plaintiff, is corroborative proof that Harrington knew he had surrendered his policy for cancellation on November 18th.
Accordingly the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of defendant, The Travelers Insurance Company, dismissing plaintiff’s suit; all costs to be paid by plaintiff-appellee.
Reversed.
JANVIER, J., absent.