**Shirley A. RECCKO**

v.

**CRISS CADILLAC COMPANY, INC., and John J. Capuano.**

**No. 87–77–Appeal.**

Supreme Court of Rhode Island.

Dec. 13, 1988.

Douglas James Rose, John P. McGann, Coffey, McGovern, Noel & Neal Ltd., Providence, for defendant.

J. Ronald Fishbein, Lauren E. Jones, Jones & Aisenberg, Providence, for plaintiff.

## OPINION

KELLEHER, Justice.

This tale of a twice-sold "brand new" 1980 Cadillac Coupe de Ville concerns the grant by a Superior Court justice of the defendants' motion for summary judgment. The grant was based on the trial justice's belief that the plaintiff's effort at seeking a rescission of the sales contract precluded her from making any other claims in this dispute. Hereafter we shall refer to Shirley A. Reccko, the plaintiff, as Reccko, to the corporate defendant Criss Cadillac

Company, Inc., as Criss, and to the individual defendant, John J. Capuano, as Capuano.

In mid-November 1980, Reccko purchased from Criss a 1980 Cadillac Coupe de Ville. Capuano, who was employed by Criss, assured Reccko that she was purchasing a "brand new" vehicle. Shortly after the purchase, the Cadillac's steering mechanism went awry. After Criss had repaired the vehicle, Reccko was advised by a John DiStefano that he had previously owned the car and that the vehicle, which had been involved in a collision, had had numerous mechanical difficulties. After verifying this information, Reccko contacted Criss and met with its president, who offered to locate another car for her, stating that she could have a new 1981 vehicle or a Porsche. Reccko, however, explained to the president that she believed she should receive a new car plus a refund of the purchase price for "all the aggravation" she had experienced.

In a letter dated December 17, 1980, Criss's attorney offered to accept the return of the vehicle and refund Reccko's purchase price. Criss also offered to attempt to locate a substitute vehicle that had an equivalent value to the Coupe de Ville. However, Criss termed Reccko's demand for a new car plus a return of the purchase price as "unreasonable" and "totally unacceptable."

In late December 1980 Reccko's attorney, in a letter to Criss, confirmed his client's "offer in mitigation of damages" to redeliver the Cadillac to Criss and to accept the return of her purchase price. The letter stated:

"Nothing herein contained shall be interpreted as an offer in compromise, an accord and satisfaction, a novation or rescission. The express purpose is to mitigate damages insofar as possible and any money received by [Reccko] from [Criss] will be credited to any settlement or judgment subsequently obtained by her."

Counsel also emphasized that Reccko intended to reserve her rights pursuant to G.L. 1956 (1985 Reenactment) § 6A–2–721, which states:

"Remedies for material misrepresentation or fraud include all remedies available under this chapter for non-fraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy."

In a letter dated January 2, 1981, Criss's counsel advised Reccko's counsel that in accordance with her request, Criss's employees would take possession of the car on that day. The letter also stated that Reccko would receive a check for $4,427.70 and another check for $7,882.30 would be delivered to Reccko's credit union in order to release the credit union's security interest in the vehicle. The total of these checks represented a full refund of the price Reccko paid for the car.

Reccko's attorney immediately responded to the letter sent by Criss's counsel with a handwritten addition to the letter wherein counsel for the dealer acknowledged that Reccko's return of the car was "with her intent to mitigate damages and is not with her intent to rescind, nor is it intended to be an accord and satisfaction, novation, settlement, general or special release, or other."

Time marched on and more than four years after this litigation had commenced, Criss filed a motion for summary judgment, claiming that Reccko was barred from pursuing any other remedies because she had elected to rescind the contract. The trial justice agreed, and this appeal ensued.

In *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 112, 265 A.2d 429, 434 (1970), this court defined "rescission" as "a mutual agreement by the parties to an existing contract to discharge and terminate their duties thereunder." The court also pointed out that "abandonment of contract" differs from "rescission" because an abandonment is a unilateral action whereas rescission comes as a result of a bilateral effort.

Professor Corbin offers the following comment:

"[I]t is often said that the injured party may 'elect to rescind', but that by such an 'election' he deprives himself of his right to compensatory damages for the breach. * * * It is true that an agreement to rescind is inconsistent with enforcement of that which is rescinded; but an agreement to rescind can be restricted by the parties in any way that they see fit; and it should never prevent the enforcement of any rights and duties that they did not intend to discharge." 5A *Corbin on Contracts*, § 1237 at 546–47 (1964).

In differentiating between rescission and an attempt to mitigate damages, Corbin notes that

"There are * * * methods by which [the injured party] may reasonably endeavor to avoid or reduce injury: he may contract for some substitute material or service * * * he may demand replacement or repair of defects; he may ask compensation for what he has done; he may demand his money back or the reconveyance of property; and he may demand compensatory damages. In doing these things, he is trying to avoid harms and losses; he is not offering a 'rescission' or 'waiving' his rights or 'electing' a remedy." *Id.* at 549–50.

Corbin also points out that if a purchase price for goods was paid before the breach or defect was discovered, then the purchaser who succeeds in getting his money back is merely mitigating his or her damages unless he "gets the money [back] by agreeing that it shall have some other effect as a mutual rescission or an accord and satisfaction." *Id.* at 554.

Here the record clearly indicates that Reccko repeatedly described her return of the car as an attempt to mitigate damages and never designated her action as an offer to rescind the contract. There is no evidence of Reccko's intent to avoid the contract. To the contrary, there is much evidence showing that she did not intend to give up any claim for damages resulting from the purported breach by Criss, including punitive damages arising from the salesperson's assurance that Reccko was buying a "brand new" car.

This court, in *Klanian v. New York Life Ins. Co.*, 68 R.I. 126, 136, 26 A.2d 608, 613 (1942), declared that "[m]utual rescission rests upon intention; it depends both upon the acts of the parties and the intention with which those acts are done" and also emphasized that the presence of an intent to rescind usually creates a factual question for the jury unless the facts are admitted or clearly established.

In reviewing the grant of a motion for summary judgment, this court will search the record to determine whether there are any factual issues to be resolved. *Town of Westerly v. Waldo*, 524 A.2d 1117, 1118–19 (R.I.1987). If a genuine issue of material fact is discerned, "we have no alternative but to reverse the order granting summary judgment." *Lennon v. MacGregor*, 423 A.2d 820, 822 (R.I.1980).

On this record it is not clear whether the plaintiff will be able to substantiate her claims for compensatory, incidental, and punitive damages. However, the record clearly indicates that a question of fact does exist in regard to whether the litigants had a mutual agreement to rescind the sales contract.

Consequently the plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings.