Sandra L. BELLIVEAU et al.

v.

William J. O'COIN, Jr., et al.

No. 88–185–Appeal.

Supreme Court of Rhode Island.

April 14, 1989.

George M. Prescott, Lincoln, James Cardono, Pawtucket, Joseph A. Kelly, Caroll & Murphy, Providence, for plaintiffs.

Lauren E. Jones, Jones & Aisenberg, Providence, Paul A. Fontaine, Fontaine & Croll, Ltd, Woonsocket, for defendants.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the plaintiffs' appeal from a judgment for the defendants in the Providence County Superior Court. The plaintiffs, Sandra L. Belliveau, Ronald L. Belliveau, and Belliveau Building Corporation, appeal a Superior Court decision enforcing the defendants' exercise of a pre-emptive right of first refusal regarding the sale of real property owned by Sandra Belliveau. We reverse.

In 1979 defendants, William J. O'Coin, Jr., and Claire H. O'Coin, purchased a parcel of land in Cumberland, Rhode Island, and subdivided it into five lots. In 1982 and 1983 the Belliveaus purchased two lots, platted lots 1 and 2, as tenants by the entirety for the purpose of developing and reselling two single-family residences. Both lots were built upon and sold by the Belliveaus.

Belliveau Building Corporation (the corporation) was incorporated on March 14, 1985, with Sandra and Ronald Belliveau as the sole officers and stockholders of the corporation.

On June 13, 1985, Sandra Belliveau personally purchased a third lot, platted lot No. 4, from defendants. The property was paid for with a promissory note executed by both Sandra and Ronald Belliveau as comakers. Before conveying title, defendants recorded a declaration of restrictions, which attached twenty-one restrictive covenants to platted lots 3 and 4. All parties discussed and approved these restrictions, which include the pre-emptive right, or right of first refusal, giving rise to this appeal.[1] Lot No. 4 was then developed by

---

1. A right of first refusal is defined as the "[r]ight to have first opportunity to purchase real estate when such becomes available, or right to meet any offer." Black's Law Dictionary 1191 (5th ed.1979).

    The right of first refusal recorded regarding lots 3 and 4 reads as follows:

the Belliveaus and the corporation and, on May 20, 1986, sold to a third party after the O'Coins executed a waiver of their right of first refusal.

The subject of this appeal is platted lot No. 3, the final lot purchased from the O'Coins. Sandra Belliveau personally purchased lot No. 3 on July 17, 1985, using a promissory note executed by Sandra and Ronald Belliveau. This debt was paid in full in August, 1986, when the corporation turned over a portion of its proceeds from a construction mortgage to pay Sandra Belliveau's personal debt to the O'Coins. Payment was made by endorsing over to the O'Coins a bank check originally made payable to Belliveau Building Corporation. The O'Coins accepted this check as full payment.

On March 19, 1986, the O'Coins entered into a building contract with the corporation to construct a single-family, personal residence for the O'Coins on the remaining lot, platted lot No. 5. Before construction, the O'Coins and Sandra Belliveau agreed that interest due the O'Coins on a promissory note given personally by the Belliveaus would be set off against certain pre-construction costs owed to the corporation by the O'Coins.

Later that year, on December 29, 1986, Sandra Belliveau transferred title to lot No. 3 to the corporation for $60,000. At that time the residence under construction on the lot by the corporation was 70 to 80 percent complete. The stated purpose of this transfer was to take advantage of favorable federal income tax laws regarding capital gains that were to be phased out midnight December 31, 1986, under the 1986 Tax Reform Act. On December 30, 1986, the Belliveaus filed the appropriate forms with the Internal Revenue Service to have the corporation treated as an "S corporation" for income tax purposes.[2]

On May 1, 1987, Sandra Belliveau wrote to defendants, explained that a conveyance had occurred, requested a waiver of their pre-emptive rights for the December 29 sale, and assured the O'Coins that the corporation would honor the restriction when the property was sold in an arm's-length transaction. The O'Coins refused to execute a waiver and on May 13 recorded their intent to exercise their pre-emptive rights.

This action was brought by plaintiffs on June 5, 1987, as a declaratory judgment action to determine the validity and effect of defendants' pre-emptive rights under restriction No. 6. On July 13, 1987, the corporation entered into an agreement to sell the lot in question and the house constructed thereon for $349,000. The O'Coins have stated that they will not exercise their pre-emptive right if they will be required to meet the offered price of $349,000.

The matter before us requires this court to make an important initial distinction between the validity of defendants' right of first refusal on its face and the validity of defendants' exercise of that right in the present situation. As conceded by plaintiffs in their posttrial memorandum, on its face, restrictive covenant No. 6 creates a valid right of first refusal on behalf of defendants. As required by *Hood v. Hawkins*, 478 A.2d 181, 186 (R.I.1984), defendants' intent to create a right of first refusal is clear and unambiguous and the price and conditions of the sale are fixed or

"The grantee or grantees of premises conveyed by William J. O'Coin, Jr. and Claire H. O'Coin shall not rent, sell or convey the said premises or any part thereof to any prospective tenant or purchaser without first offering the same to William J. O'Coin, Jr. and Claire H. O'Coin in writing, for the same consideration and upon the same terms for and upon which the grantee is willing to rent, sell or otherwise convey, and stating therein the name of the prospective purchaser or tenant. William J. O'Coin, Jr. and Claire H. O'Coin shall exercise this pre-emptive right, if at all, in writing within fifteen (15) days from the date it receives the said offer. In the event

the right is not exercised the grantee may sell or rent said premises for the stated consideration to the prospective purchaser or tenant named in the notice. In the event that the issue of the grantee or grantees are the prospective tenant or purchaser, this provision shall not apply."

2. An S corporation is a "small business corporation" as defined by I.R.C. § 1361(b) (1986), that has elected under I.R.C. § 1362(a) to be treated as an S corporation for a given year. I.R.C. § 1361(a).

easily ascertainable. The fact that both plaintiffs and defendants complied with this same restriction for plaintiffs' previous sale of lot No. 4 shows that both parties believed that the restriction was, at least to some extent, valid and enforceable. Thus, the real issue before this court is not the validity of the restriction but rather the valid enforcement of that restriction, given the objectives it was created to achieve and the facts and circumstances surrounding this case. Our task is to construe the terms of the restriction and the intentions of the parties in order to determine when this otherwise valid restriction may be validly enforced.

The terms of defendants' right of first refusal meet the clarity requirements of *Hood.* "When the terms of a restrictive covenant are clear and definite, the construction of the covenant is a matter of law for the court." *Addison County Automotive, Inc. v. Church,* 144 Vt. 553, 557, 481 A.2d 402, 405 (1984). In construing the terms of restrictive covenants this court has repeatedly stated:

"[R]estrictive covenants are to be strictly construed in favor of the free alienability of land while still respecting the purposes for which the restriction was established. * * * Further, we have held that cases involving the interpretation of restrictive covenants must be decided on a case-by-case basis since they 'present such a wide spectrum of differing circumstances.'" *Gregory v. State Department of Mental Health, Retardation and Hospitals,* 495 A.2d 997, 1000–01 (R.I.1985)(quoting *Hanley v. Misischi,* 111 R.I. 233, 238, 302 A.2d 79, 82 (1973); *see also Farrell v. Meadowbrook Corp.,* 111 R.I. 747, 750, 306 A.2d 806, 808 (1973); *Emma v. Silvestri,* 101 R.I. 749, 751, 227 A.2d 480, 481 (1967)).

We believe that the covenant in question can be strictly construed to support both the principle of free alienability and the objectives behind the creation of the restriction.

█ In construing the right of first refusal contained in restrictive covenant No. 6, we must first determine defendants' intent as grantors of the restricted premises. In ascertaining the intent behind the creation of a restrictive covenant, a court should look to the pertinent language of all the covenants as a whole as well as the apparent objectives of the grantor, and the conditions existing at the time the restrictions were executed.[3] *Chase v. Joslin Management Corp.,* 128 N.H. 336, 338, 512 A.2d 434, 435 (1986); *Dreher Township Board v. Solitron Development Co.,* 333 Pa.Super. 33, 40, 481 A.2d 1207, 1211 (1984); *Addison County Automotive Inc.,* 144 Vt. at 558, 481 A.2d at 406.

When the trial justice's finding is viewed as a whole, we agree that the restrictions were recorded because defendants intended to live on their subdivision. This finding is supported, expressly and impliedly, both by the language of the declaration of restrictions and by defendants' subsequent construction of a personal residence in the subdivision.

The declaration of restrictions expressly sets out defendants' intent:

"Whereas, it is the desire and intention of William J. O'Coin, Jr. and Claire H. O'Coin, to impose certain protective covenants and restrictions in order to provide for and insure the orderly development of said NEW LOT 3 and NEW LOT 4 as an attractive residential community."

This express intent is further supported by the types of restrictions imposed by defendants, giving them the authority to control the type of activities that would directly affect them as local residents. These activities include the type and style of construction, the time within which construction must be completed, various owner activities and property uses, and the identi-

---

**3.** The defendants' contention that the question of intent is an issue of fact to be determined at trial, *Reccko v. Criss Cadillac Co.,* 551 A.2d 20, 22 (R.I.1988), is misplaced here for two reasons. First, the facts of this case are admitted and clearly established, thus making the issue of intent a question for the court. *Id.* Second, *Reccko* is factually distinguishable from the present case. *Reccko* involved the intent to rescind a sales contract for personal property—an automobile—not the intent behind the creation of a restrictive covenant to real property.

ty of the initial occupants through the right of first refusal. At trial William O'Coin's testimony indicates that his decision to record these covenants was heavily influenced by Ronald Belliveau's warnings about another builder who was interested in developing one of the lots adjacent to the O'Coins'. After directing William O'Coin to the builder's residence so he could see the trucks and construction materials stored there, Ronald Belliveau told William O'Coin that he should take precautions by placing restrictive covenants on the lots adjacent to his in order to prevent such unattractive activities. Relying on the language of the restrictions and the facts surrounding their creation, we find that the sole purpose of recording these restrictions was to give defendants control over the creation and preservation of the community in which they were going to live.

■ The second step in construing defendants' right of first refusal involves the interpretation of the language of the covenant itself. The language of covenant 6 requires that the grantee, Sandra Belliveau,

"shall not rent, sell or convey the said premises or any part thereof to any prospective tenant or purchaser without first offering the same to William J. O'Coin, Jr. and Claire H. O'Coin in writing, for the same consideration and upon the same terms for and upon which the grantee is willing to rent, sell or otherwise convey."

When read in pari materia with the requirement of restrictive covenant No. 1 that all residences be "owner-occupied,"[4] we are of the opinion that the term "prospective tenant or purchaser" was intended to create a right of first refusal over any conveyance of the premises to a future *resident*. Such a construction supports the intent of defendants' declaration of restrictions, as well as

the principle of free alienability absent in defendants' hyper-technical interpretation of covenant No. 6. By giving defendants a right of first refusal over prospective initial residents, covenant No. 6 supports defendants' objectives—to develop and maintain "an attractive residential community"—by effectively allowing them to veto any conveyance to a prospective occupant whom defendants view as a danger to the "attractive" nature of their neighborhood. Construing restrictive covenant No. 6 in this manner, we find that the conveyance at issue in this case was not the type intended to trigger defendants' right of first refusal.

The conveyance of the subject lot from Sandra Belliveau to the corporation does not give rise to defendants' right of first refusal for two reasons. First, the conveyance was made solely for legitimate tax-avoidance reasons. The plaintiffs' claimed tax motivation for this "sale" is supported by the sweeping tax-law changes that took effect only two days after the transfer was made[5] and the corporation's contemporaneous filing for S-corporation tax status.[6] Nothing in plaintiff's transaction suggests the type of "arms' length dealing between an owner willing (but not forced) to sell, and a buyer willing (but not forced) to buy, which usually characterizes an open market sale." *Sand v. London & Company*, 39 N.J. Super. 513, 518, 121 A.2d 559, 562 (1956)(as cited by *Kroehnke v. Zimmerman*, 171 Colo. 365, 369, 467 P.2d 265, 267 (1970); *Isaacson v. First Security Bank of Utah*, 95 Idaho 452, 454, 511 P.2d 269, 271 (1973)).

Second, based on the facts of this case, we find that the conveyance at issue resulted in no significant transfer of ownership interest. None of the parties involved in this case were strangers to one another. The defendants, the O'Coins, knew that Sandra and Ronald Belliveau were in the business of developing residential lots for

4. Covenant 1 reads in pertinent part: "The NEW LOT 3 and NEW LOT 4 shown on the plat shall be used for residential purposes only and restricted to one family owner-occupied private residences with garage."

5. See I.R.C. § 1201 on capital gains and I.R.C. § 1202 Repealed. P.L. 99–514, title III,

§ 301(a)(1986), on the deduction for capital gains as amended by the Tax Reform Act of 1986.

6. See I.R.C. §§ 1361, 1362, and 1363 for the definition and tax treatment of S corporations and their shareholders.

resale as the O'Coins conveyed the first two lots to the Belliveaus as tenants by the entirety. The O'Coins knew of the existence of the corporation as they contracted with it for the construction of their own home. And the O'Coins had ample reason to know of Sandra and Ronald Belliveau's substantial control over the corporation bearing their name: the O'Coins negotiated with Ronald Belliveau in contracting for the corporation to build their home; the O'Coins allowed money owed to them by Sandra Belliveau, personally, to be set off against money the O'Coins owed to the corporation; and the O'Coins accepted payment of a debt, personally incurred by Sandra Belliveau, by means of a check originally made payable to Belliveau Building Corporation that had been endorsed over to the O'Coins by Sandra Belliveau, acting as treasurer of the corporation.

Relying on the above interactions, we are of the opinion that the conveyance of the subject lot from Sandra Belliveau to the corporation did not amount to a "significant transfer of ownership or control to an unrelated third party." *Prince v. Elm Investment Co.*, 649 P.2d 820, 823 (Utah 1982).

In *Prince* the Supreme Court of Utah found that for the purposes of a right of first refusal, a "sale" occurs when there is a transfer "(a) for value (b) of a significant interest in the subject property (c) to a stranger to the lease [covenant], (d) who thereby gains substantial control over the leased [subject] property." *Id.* In our case, even though the transfer was for value and was of a significant interest in the property, we do not believe that the transfer conveyed ownership to a "stranger" or "unrelated third party," or that the conveyee thereby gained substantial control over the property. *Id.* The corporation was not an unrelated third party because of its intimate interactions with the other parties involved, and no *substantial* control was *gained* by the corporation because (1) the transferor, Sandra Belliveau, was a joint owner of the transferee, Belliveau Building Corporation; (2) both joint owners of the transferee/corporation, Ronald and Sandra Belliveau, were comakers to the promissory note given in the initial sale of the lot; and (3) Belliveau Building Corporation already possessed a substantial interest in the property based on the improvements it had made thereon. Thus this transfer did not substantially affect the persons in a position to control the subject property. It was solely for the convenience of managing the property and was not a sale or conveyance within the meaning of the declaration of restrictions.

The defendants contend that in order for this court to adopt plaintiffs' argument that the conveyance was not a sale, we would have to improperly disregard the corporation's corporate identity. We disagree.

There is no need in this case to disregard the corporation's status as a legal entity separate and distinct from its owners. Sandra Belliveau's conveyance of platted lot No. 3 to the corporation was a transaction between two separate entities and will be honored as such. However, relying on the intent of the covenants and the parties' intimate interactions with one another, we find that defendants' right of first refusal simply does not apply to a conveyance between related, interested parties in circumstances in which that conveyance is made solely for the purpose of managing the property's development.

Given these findings, we are of the opinion that it would be inequitable to allow defendants to exercise their right of first refusal in the present situation. Equity should deny relief to a party seeking enforcement of a restrictive covenant "if the harm done by granting the injunction [enforcing the covenant] will be disproportionate to the benefit secured thereby." *Dreher Township Board*, 333 Pa.Super. at 41, 481 A.2d at 1212 (quoting Restatement of Property, § 563 (1944)).

Under the trial court's decision plaintiffs stand to lose all out-of-pocket expenses incurred after receiving notice of defendants' intent to exercise the right of first refusal, plus all profits. The defendants have failed to show any benefit that would suggest placing such a burden on plaintiffs.

The defendants have expressed no desire or need for housing—they already have a custom-designed home under construction —nor have they shown how the enforcement of their right would further the objectives of the restrictions. Instead it appears that the sole benefit to be secured by defendants is an economic windfall at the expense of plaintiffs. This quest for monetary gain is supported by William and Claire O'Coin's statements that they will not exercise their right of first refusal should they be required to pay fair market value for the property.

In our opinion, the most equitable solution under the circumstances is to allow the conveyance and require that the corporation, as a purchaser with actual or constructive notice of the defendants' rights, take the property subject to those rights. *Straley v. Osborne*, 262 Md. 514, 524, 278 A.2d 64, 70 (1971). Thus, the defendants may seek to enforce their right of first refusal at such time and at such value as may exist in any conveyance by the corporation to an unrelated, prospective resident in an arm's-length transaction. In this way our decision supports both the defendants' objectives and the principles of free alienability of property.

The plaintiffs' appeal is therefore sustained, the judgment entered below is reversed, and the papers of the case are remanded to the Superior Court for an entry of judgment in accordance with this opinion.

Chief Justice FAY did not participate.