DECISION
This matter was heard by the court sitting without a jury in June 1997 and November 1997. Belliveau Building Corporation (plaintiff) seeks damages for William J. and Claire H. O'Coin's (defendants) alleged tortious interference with the plaintiff's contract for the sale of real estate. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 Facts/Travel
On July 17, 1985, Sandra Belliveau purchased New Lot 3 from the defendants. The parties agreed to attach several restrictive covenants to New Lot 3, including one which gave the defendants a preemptive right or right of first refusal if Sandra Belliveau wanted to sell New Lot 3. Under the "right of first refusal" covenant, Sandra Belliveau had to first offer to sell the lot to the defendants for the same consideration as offered to the prospective buyer, before selling the lot to the prospective buyer. The defendants could exercise their preemptive right within 15 days of receiving such an offer.
On December 29, 1986, Sandra Belliveau sold New Lot 3 to Belliveau Building Corporation for $60,000 in order to take advantage of favorable capital gains tax laws which were being phased out. On May 1, 1987, Sandra Belliveau requested a waiver of the defendants' right of first refusal for the December 29th sale. Sandra Belliveau also told the defendants that Belliveau Building Corporation would honor the right of first refusal if the corporation sold the property in an arms-length sale. The defendants refused to waive their right of first refusal. On May 13, 1987, the defendants recorded their intent to exercise their preemptive right. In turn, Sandra Belliveau, Ronald Belliveau, and the plaintiff filed a declaratory judgment action on June 5, 1987 to determine the validity of the defendants' preemptive right over New Lot 3. While that action was pending, Belliveau Building Corporation entered into a contract on July 13, 1987 to sell New Lot 3 to Stephen B. Butler and Patricia E. Butler for $349,000. The plaintiff requested that the defendants execute a waiver of their right of first refusal for this sale. Instead, on August 11, 1987, the defendants recorded a second notice of intent to exercise their preemptive right. In the notice the defendants stated that "this is a SECOND NOTICE AND DEMAND to purchase for the same consideration the transfer which took place December 29, 1986." (Plaintiffs Exhibit 14). The defendants also stated "[w]ith respect to Notice of Proposed Sale to Stephen B. and Patricia E. Butler dated July 20, 1987 we do not acknowledge or give credence to the same since we have outstanding, our exercise of rights in effect and of record." (Plaintiff's Exhibit 14). The Butlers later withdrew from the contract because the plaintiff could not convey good, clear, marketable title.
On January 13, 1988, the Superior Court issued a decision for the declaratory judgment action brought by Sandra Belliveau, Ronald Belliveau, and the plaintiff. Sandra Belliveau, et al v.William J. O'Coin, Jr., et ux, C.A. 87-2398, January 13, 1988, (Cresto, J.). Judge Cresto ruled in favor of the defendants, finding that the defendants had validly invoked their right of first refusal. On appeal, the Rhode Island Supreme Court reversed. Belliveau v. O'Coin, 557 A.2d 75 (R.I. 1989). The Supreme Court found that the defendants' right of first refusal was not applicable for a conveyance to the Belliveaus' own corporation. Id. at 79.
In May 1990, the plaintiff brought the instant action. In May 1996, the plaintiff amended its complaint to eliminate a slander of title count, leaving only a count for tortious interference for the two notices of preemptive right recorded by the defendants. On February 19, 1997, this court decided that the plaintiffs action based on the first notice of preemptive right was barred under the theory of res judicata. The principles of res judicata applied because the alleged tortious interference for the first preemptive notice arose before the plaintiff filed its declaratory judgment and injunctive relief action. However, res judicata did not bar the plaintiff's instant tortious interference for the recording of the second preemptive notice because the defendants recorded this notice after the plaintiff had filed its declaratory judgment and injunctive relief action.
In June 1997, this Court heard testimony and received evidence on the plaintiff's claim for tortious interference for the recording of the second preemptive notice (right of first refusal). At trial, William J. O'Coin testified that the intention of the second notice of preemptive right was to reaffirm the first notice of preemptive right. William J. O'Coin said that the O'Coins did not intend to buy New Lot 3 for the $349,000 price contained in the Butler's contract. The plaintiffs title expert, Henry Blais III, testified that the defendants' recording of the first and second preemptive notices negatively affected the marketability of the title for New Lot 3 and clouded the title for New Lot 3. Blais also testified that the deed evidencing the sale of December 29, 1986 created a question about the title, although the title still would have been insurable if the defendants had not recorded the preemptive notices.
The defendants' title expert, Michael McElroy, testified that the defendants had to record the second preemptive notice in order to protect their property right. McElroy further testified that the recording of the deed for the December 29, 1986 sale clouded the title for New Lot 3. McElroy said that the deed of December 29, 1986 was the source of the clouded title, because the plaintiff waited until May 1, 1987 to inform the defendants of the December 29th conveyance and request a waiver of the defendants' preemptive rights. According to McElroy, the recording of the second preemptive notice did not further cloud the title. Ron Belliveau, an officer of the plaintiff, testified that defendant Claire O'Coin threatened to "bury him" and drive the plaintiff out of business if Belliveau put a mechanic's lien on the O'Coin's house in order to obtain payment for its construction. Claire O'Coin claimed that she did not make such a statement.
The plaintiff asserts that the defendants' recording of the second preemptive notice constituted tortious interference with its contract for the sale of New Lot 3 to the Butlers. The plaintiff argues that the defendants had no legal justification for filing the second preemptive notice as the defendants did not intend to purchase the property for $349,000. The plaintiff further argues that the second preemptive notice caused the Butlers to withdraw from the contract and the plaintiff suffered damages in having to hold onto the property until September 1, 1989, when they were able to sell New Lot 3. The plaintiff claims damages in the amount of $57,321.53. The defendants respond that they did not intend to interfere with the plaintiffs contract and had no malice relative to plaintiff's contract with the Butlers. The defendants state that the preemptive notices did not cause the Butlers to withdraw from the contract because the title was already clouded from the plaintiff's recording the December 29th deed.
 Tortious Interference
"The basic elements of a claim based on tortious interference with a contractual relationship are (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom." Jolicoeur Furniture Co. Inc. v. Baldelli,653 A.2d 740, 752 (R.I. 1995) (citing Smith Development Corp. v. BilowEnterprises, Inc., 112 R.I. 203, 211, 308 A.2d 477, 482 (1973)). "When the plaintiff establishes these four elements, the burden then shifts to the defendant to demonstrate a justification for the interference." New England Housing v. Rhode Island,893 F. Supp. 1180, 1192 (D. R.I. 1995). "It is usually said that tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another person if the interference causes the plaintiff to lose a right under the contract or makes the contract rights more costly or less valuable." Jolicoeur, 653 A.2d at 752 (citing W. Page Kecton, et al, Prosser and Keeton onthe Law of Torts, § 129 at 978 (5th ed. 1984)). "Even where the defendant asserts that it was merely exercising its own contractual rights, its actions, if found to be unreasonable, can constitute improper interference with the plaintiff's contractual relationship." New England Housing, 893 F. Supp. at 1192.
The plaintiff argues that the above factors set out inJolicoeur, supra, apply to the present case. The plaintiff argues that the evidence at trial demonstrated that the defendants intended to interfere with the plaintiff's contract and knew that the recording of the second preemptive notice would cloud the title. The plaintiff points to the statement of Claire O'Coin as evidencing intent on the part of the defendants to harm the plaintiffs contractual relations. The plaintiff also argues that the defendants were not justified in filing the second preemptive notice because they did not use their preemptive right in order to determine the identity of the residents of New Lot 3, but rather attempted to reaffirm their invalid first preemptive notice. Finally, the plaintiff argues that the defendants' action in filing the second preemptive notice proximately caused damage to the plaintiff. The plaintiff notes that two or more causes which are incapable of division and which are each a substantial factor in causing harm, are both held responsible for causing harm. The plaintiff asserts that this "substantial factor" exception allows both the first and second preemptive notices to serve as equal causes of the clouding of title. The clouding of title ultimately caused the Butlers to withdraw from the contract to purchase New Lot 3. The plaintiff states that it was reasonably foreseeable that the plaintiff's contract would be disrupted upon the defendants' filing the second preemptive notice.
The defendants respond that they had a good faith belief that the filing of their preemptive notices was justified. Therefore, according to the defendants, they did not intentionally interfere with the Butlers' contract in an improper manner. The defendants assert that the plaintiff must prove the defendants recorded the second preemptive notice with knowledge that they did not have a valid preemptive right. The defendants contend that the plaintiff has failed to prove such knowledge on the part of the defendants. Finally, defendants state that the plaintiff has not shown that the recording of the second preemptive notice was the proximate cause of the plaintiffs damages. The defendants maintain the title was clouded initially by the first preemptive notice, so the second notice did not directly cause the Butlers to pull out of the contract.
In the case at bar, the first two elements of proof for a tortious interference action have clearly been established. The plaintiff and the Butlers entered into a contract for the sale of New Lot 3 contingent on the Butlers obtaining good title to New Lot 3. The defendants were aware of the existence of this contract, when the plaintiff notified the defendants of the proposed sale and asked for a waiver of the defendants' right of first refusal.
The evidence at trial also satisfies the third element of proof. The defendants filed the second preemptive notice in direct response to receiving notification of the plaintiffs contract with the Butlers. The defendants specifically directed the second preemptive notice against the plaintiff's contract with the Butlers when the defendants stated "we do not acknowledge or give credence" to the Butlers' contract. This Court finds that the statements of Claire O'Coin, threatening to drive the plaintiff out of business combined with the timing of the filing of the second preemptive notice, demonstrates the defendants' intent to interfere with the Butlers' contract. The timing of an action can serve as evidence of an intent to interfere with or stop a contract. See Jolicoeur, 653 A.2d at 746, 753 (Mayor's veto of an ordinance amendment which would have allowed the plaintiff more time to submit plans to fulfill a construction contract provided evidence of the mayor's intentional interference with the plaintiffs contract); Mesolellav. City of Providence, 508 A.2d 661, 663, 670, 671 (R.I. 1986) (amendment of the zoning ordinance in response to the plaintiff's application for a building permit provided evidence of intentional interference with the plaintiffs prospective building project). In examining the wording of the defendants' second preemptive notice, this Court concludes that the defendants intended for the Butlers' contract to fail and the prior notice to succeed in enabling the defendants to purchase the property for $60,000, instead of the Butlers purchasing the property for $349,000.
Lastly, the plaintiff must prove that it was damaged from the defendants' intentional interference. The plaintiff asserts that it experienced costs in holding onto the property for approximately two years until it could find a new purchaser. The plaintiff says that the defendants' action in filing the second preemptive notice clouded the title to New Lot 3 which in turn caused the Butlers to withdraw from the contract to purchase New Lot 3. The defendants contend that the title to New Lot 3 was already clouded by the first preemptive notice and therefore, the second preemptive notice did not cause the Butlers to withdraw from the contract.
"[T]here is no superseding-cause concept applicable to intentional torts." Clift v. Narragansett Television L.P.,688 A.2d 805, 812 (R.I. 1996). Also, according to the Restatement (Second) of Torts § 433A Comment i:
 "Where two or more causes combine to produce . . . a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm."
The above circumstance applies to the case at bar. The "clouding of title" and the consequent interference with the Butlers' contract cannot be easily apportioned among the two preemptive notices. Both notices clearly constituted a substantial factor in causing the clouded title and the dissolution of the Butlers' contract. In fact, the second notice purported to reaffirm the first notice, so both notices were intertwined in clouding the title for New Lot 3. The first preemptive notice did not supersede the second preemptive notice, because the tortious interference caused by the second notice is an intentional tort. Both notices are responsible for the entire harm.
The harm must also be reasonably foreseeable. Clift, 688 A.2d at 812. However, a defendant who commits an intentional tort is responsible for injuries which go beyond the limits of foreseeability. Mayer v. Town of Hampton, 497 A.2d 1206, 1209-1210 (N.H. 1985). Therefore, based upon the foregoing, this Court finds that the plaintiff has proven that the defendants' action in filing the second preemptive notice proximately caused the Butlers to withdraw from the sales agreement for New Lot 3, which resulted in "holding-cost" damages to the plaintiff. "Holding cost" damages include mortgage interest, maintenance costs, insurance costs, and other costs associated with retaining ownership of the property for approximately two years until the plaintiff was able to procure a new buyer.
The foregoing establishes that the plaintiff has made out a prima facie case for tortious interference. This Court must now determine whether the defendants' action in filing the second preemptive notice was legally justified. In a cause of action for tortious interference, "malice, in the sense of spite or ill will, is not required; rather legal malice — an intent to do harm without justification — will suffice." Jolicoeur, 653 A.2d at 753 (quoting Mesolella v. City of Providence,508 A.2d 661, 669-670 (R.I. 1986)).
The defendants maintain that they were making a "good faith" effort to exercise a contractual right — the restrictive covenant which granted them a right of first refusal. However, even the exercise of a contractual right can constitute tortious interference. New England Housing, 593 F. Supp. at 1192; ThompsonTrading v. Allied Breweries Overseas, 748 F. Supp. 936, 943, 945 (D. R.I. 1990).
Our Supreme Court has already determined that the defendants' attempt to exercise their right of first refusal in filing the first preemptive notice was invalid. Belliveau v. O'Coin,557 A.2d 75 (R.I. 1989). The court found that the right of first refusal was applicable only to arms-length transactions involving third parties. Id. at 78-80. Since the defendants' second preemptive notice purports to reaffirm the invalid first preemptive notice, the second preemptive notice is likewise invalid and without legal justification. The defendants state that they acted within the "rules of the game" in honestly attempting in good faith to protect a legal right. Yet, "[i]f [the] interference is found to be intentional and without justification, it is malicious in law even though it arose from good motives and without express malice." Jolicoeur, 653 A.2d at 753 (quoting Steranko v. Inforez, Inc., 5 Mass. App. Ct. 253, 273, 362 N.E.2d 222, 235 (1977), adopted in Gram v. LibertyMutual Insurance Co., 384 Mass. 659, 429 N.E.2d 21 (1981)). Similarly, the improper exercise of other legal rights has been found to constitute tortious interference. See Jolicoeur,653 A.2d 740 (mayoral veto); Mesolella, 508 A.2d 661 (city council zoning amendment); Kjesbo v. Ricks, 517 N.W.2d 585 (Minn. 1994) (right of first refusal against purchaser of a family farm). Rhode Island law on tortious interference does not have a heightened standard of proof requiring willful and malicious interference, as is required in other states. See Thompson, 748 F. Supp. at 944. Although the defendants may not have acted "spitefully" or with "ill will," they did not have legal justification to file the second preemptive notice. This Court finds unpersuasive the defendants' argument that they were only attempting to protect their rights for New Lot 3. The defendants already had on record their first preemptive notice which gave notice to any prospective purchaser that the defendants had an outstanding claim for a right of first refusal. The second preemptive notice did not serve the defendants any more than the first preemptive notice, other than to directly affront the plaintiff's contract with the Butlers. This Court finds that because the defendants can offer no legal justification for the filing of the second preemptive notice, the defendants committed tortious interference with the plaintiff's contract with the Butlers.
 Punitive Damages
The plaintiff also seeks punitive damages. The plaintiff argues that the defendants acted with actual malice (ill will and spite) in tortiously interfering with the plaintiff's contract. The plaintiff argues that punitive damages are appropriate when a person acts with actual malice in tortiously interfering with a contract. The defendants argue that punitive damages are not appropriate because the defendants' conduct did not rise to the level of criminality and constituted an honest mistake. "[T]he party seeking punitive damages has the burden of producing evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount(s) to criminality, which for the good of society and warning to the individual, ought to be punished." Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993). Punitive damages are appropriate where the "defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." Id. "An award of punitive damages is considered an extraordinary sanction and is disfavored in the law. . . ." Id.
The defendants' conduct in the instant case has not risen to the level of "criminality." While the defendants did intentionally interfere with the plaintiff's contract, defendants' actions were not done with such "wickedness" as to require the imposition of punitive damages. This Court also finds that an award of compensatory damages will adequately deter the defendants from any future improper conduct.
 Conclusion
This Court finds that the defendant's filing of the second preemptive notice constituted intentional tortious interference with the plaintiffs contract with the Butlers, causing damages to the plaintiff. The defendants' conduct was not legally justified. Accordingly, this Court grants the plaintiff compensatory damages in the amount of $57,321.53.
Counsel shall prepare the appropriate judgment for entry.