GEORGE BESSETTE *et ux. vs.* MONTY A. GUARINO *et ux.*

FEBRUARY 1, 1957.

PRESENT: Flynn, C. J., Condon, Roberts and Paolino, JJ.

CONDON, J. This is a bill in equity to enjoin the respondents from violating certain building restrictions in the deeds of the parties from common grantors. The cause was fully heard in the superior court on bill, answer and proof. Thereafter the trial justice entered a decree granting the relief prayed for. From that decree the respondents have appealed to this court.

They contend among other reasons in support of such appeal that complainants are not entitled to enforce the restrictions against them because (1) complainants' deed is prior to theirs; (2) there is no express undertaking by the grantors in complainants' deed to bind their remaining land; (3) there is no evidence that said grantors represented that the same or similar restrictions would be imposed on their remaining land; and (4) there is no evidence that they had a fully developed building scheme for the area. On the view that we take of these contentions it will not be necessary to refer to respondents' other reasons of appeal nor to set out the restrictions.

The complainants and the respondents own adjoining lots of land in the town of Cumberland. The lots are described by metes and bounds and do not appear on any recorded plat in the records of land evidence in said town. They are parts of a tract originally owned by the Bishop family. From time to time it appears that thirteen lots, all described by metes and bounds, were carved out of this tract. The first two were sold in 1938 and 1940 without

restrictions of any kind. From 1941 to 1943 three more lots were sold, and these contained only three simple restrictions prohibiting the erection of any building thereon for commercial purposes, the use of any building for such purposes, and the keeping on the premises of any livestock except domestic pets.

Sometime thereafter the remainder of the tract was transferred to two of the Bishop heirs, Newell Bishop and Hillman Bishop. On July 22, 1948 they conveyed a portion thereof to the MacFawns and incorporated therein a list of ten restrictions much more elaborate than those contained in the three deeds from 1941 to 1943 above mentioned. These restrictions, with the exception of one fixing the minimum cost of any dwelling to be erected thereon at $7,500, were incorporated in all subsequent deeds to portions of the tract including those to the parties in the instant suit.

The complainants' lot was conveyed to them by deed from the Bishops dated September 9, 1950. The respondents received their deed from the same grantors on May 11, 1951. Neither deed contained any covenant on the part of the grantors that they would convey the remaining portion of the tract subject to the same restrictions. However, at the time of the trial in the superior court they had sold five additional lots containing such restrictions.

On the facts in evidence it is clear this is not a case involving a recorded plat with certain streets and lots delineated thereon and where one or more lots have been conveyed by reference to the plat and subject to certain building restrictions either recorded on the plat or contained in the deed. In such a case there can be no question that the restrictions are for the benefit of all grantees regardless of the priorities of their deeds. "It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan

of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others." *Werner* v. *Graham*, 181 Cal. 174, 183. That court held, however, that where the deed contained no language expressing such a common plan or indicating any agreement between grantor and grantee that the land conveyed was subject to such a plan, the covenant was not reciprocal so as to bind other grantees. See also *Fees* v. *Williams*, 212 Cal. 688.

In *Mulligan* v. *Jordan*, 50 N. J. Eq. 363, 364, the complainant sought to enjoin the respondent from violating certain identical restrictions in their deeds from a common grantor. The complainants' deed was prior to that of respondent. The court denied the injunction on the ground that complainant had no standing to sue respondent, saying: "The right of an owner of a lot to enforce a covenant (to which he is not a party or an assign) restrictive of the use of other lands is dependent on the covenant having been made for the benefit of this lot. Obviously, while a subsequent purchaser might, by the operation of this rule, acquire a right of action against a prior purchaser, the prior purchaser would acquire no rights from a covenant entered into by a subsequent purchaser, unless there exists some condition which will entitle him to the benefit of such covenant."

In that case the court expressly held that the mere fact that the same covenants were inserted in all deeds, was not sufficient to show it was for the benefit of other lands conveyed by the common grantor. They stated: "The right of grantees from the common grantor to enforce, *inter se,* covenants entered into by each with said grantor is confined to cases where there has been proof of a general plan or scheme for the improvement of the property and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the party has bought with reference to such general plan or

scheme, and the covenant has entered into the consideration of his purchase." To the same effect is *Roberts* v. *Scull,* 58 N. J. Eq. 396.

In the absence of a general building scheme or plan, restrictive covenants in deeds from a common grantor cannot be enforced by a prior grantee against a subsequent grantee unless the common grantor covenants to insert in apt language like restrictions in the deeds of his remaining lots or lands for the common benefit of all his grantees. *Scull* v. *Eilenberg,* 94 N. J. Eq. 759; *Stevenson* v. *Spivey,* 132 Va. 115; *Summers* v. *Beeler,* 90 Md. 474.

In the last-cited case a tract was subdivided into twenty-eight lots and a plat thereof was recorded in the county records. There were no restrictions on the plat and five lots were sold without restrictions. Later, however, lot 11 was sold and finally conveyed by mesne conveyance to the complainant Summers. Subsequently lot 10 was sold and by mesne conveyances came to the respondent Beeler. Each of these deeds contained identical restrictions. In the deed of lot 11 the grantor did not impose any servitude upon his remaining land which included lot 10. In denying complainant's bill to enjoin Beeler from violating such restrictions the Maryland court held that they did not enure to complainant's benefit because there was no privity either of contract or estate between him and Beeler. The court stated that mere incorporation of the same covenant in both deeds was not of itself sufficient evidence of such benefit.

In *Stevenson* v. *Spivey, supra,* a land company platted a tract of land and sold 819 lots therefrom without and 802 with building restrictions. Because of such lack of uniformity the court held that the company's conduct was inconsistent with a general scheme. Deeds of both parties contained identical restrictions. The plaintiff sought to enforce them against the defendant on that ground. The court rejected such contention, pointing out that the mere exist-

ence of the restrictions in each conveyance was not in itself sufficient to support a claim of right to enforce them *inter se.* Such right, the court held, must be shown by preponderating affirmative evidence either expressly by the deeds, endorsement on the plat, or satisfactory proof of a purpose or plan to establish mutual covenants for mutual benefits.

In the case at bar it is clear beyond question that there was no general plan or scheme intended by the Bishop family to benefit all grantees when they first began to sell off parcels of their tract. The first five deeds were not uniform, two contained no building restrictions of any kind, and three contained only a few simple restrictions. None of those restrictions could have been enforced by either of the first two grantees, and clearly neither they nor the three subsequent grantees could have enforced them against the remaining parcels held by the Bishop family. Indeed the family transferred the remaining lots to Newell Bishop and Hillman Bishop apparently without any restrictions.

When they made their first deed to the MacFawns and their later deeds to the parties here, they incorporated therein the elaborate restrictions in question and included the statement that such restrictions were to remain in effect until January 1, 1960, at which time "they may be changed only with the consent of two thirds of the home or lot owners on the west side of Diamond Hill Road and south of Sneech Pond Road who at that time own lots which were at one time purchased" from members of the Bishop family or their successors and assigns.

It may be argued that the language quoted in that statement indicates these restrictions were inserted for the benefit of all the grantees. The answer thereto is that such provision is clearly lacking in mutuality, because it does not bind the grantees in the first five deeds and yet it purports to give them a vote in determining any proposed change in the restrictions which do not bind them. Moreover it appears to be ambiguous. It states that the restric-

tions are to remain in effect until January 1, 1960. What the conveyancer probably meant to say was that the restrictions may not be changed before January 1, 1960 and then only by a vote of two thirds of the lot owners as described.

Assuming that the provision should be so construed, conceivably the grantees under the first five deeds who are not subject to the restrictions could combine with four grantees who are subject thereto and impose even more burdensome restrictions, or on the other hand they could relax or eliminate them. Therefore this provision, instead of indicating reciprocal and mutual rights and obligations of all the grantees, appears to negate such reciprocity and mutuality. In any event we are of the opinion that it cannot reasonably be relied upon to show that it was inserted in the deeds for the *mutual benefit* of each grantee.

From our consideration of the authorities, we are satisfied that in the absence of a general scheme or plan by the common grantor for the improvement of the property for the benefit of all grantees, the complainants here, being prior grantees, cannot enforce the restrictions against the respondents who are subsequent grantees. The restrictions in complainants' deed are a burden or servitude on their lot in favor of the grantors' remaining land at the time of such deed and are enforceable by them or their assigns. The principle involved here has been well stated in 14 Am. Jur., Covenants, Conditions and Restrictions, §322, p. 658, as follows: "Where a prior purchaser of land subject to restrictions seeks to enforce the restrictions against a subsequent purchaser from the same grantor, subject to the same restrictions, it cannot be said that the restrictions in the later deed were an inducement to the prior purchase. The right of the prior grantee in such a case to enforce the restrictive covenant against subsequent grantees has been confined to cases in which there is proof of a general plan or scheme for the improvement of the property."

On the view which we have taken there is no need for us to discuss *Ball* v. *Milliken,* 31 R. I. 36, which was relied upon in the superior court, since that case did not involve a prior grantee seeking to enforce restrictions against a subsequent grantee. On the contrary, the complainant in that case was the devisee of the respondent's grantor and was seeking to enforce a condition in the respondent's deed.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a new decree in accordance with this opinion denying and dismissing the bill.

ROBERTS, J., dissenting. I agree with the rule of law relied upon by the majority in deciding this case. However, it is my opinion that there is evidence in the record that the grantor intended to restrict the eight lots remaining in the tract after July 1948 according to a general scheme for the development of an exclusive high-grade residential district.

*Frank O. Lind, Jr.,* for complainants.

*Woolley, Blais & Quinn,* for respondents.