302 A.2d 79.

Arthur F. Hanley *et al.* vs. Herbert R. Misischi *et al.*

MARCH 19, 1973.

Present: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

KELLEHER, J. This is an appeal from a judgment entered in the Superior Court denying and dismissing an appeal taken pursuant to G. L. 1956 (1970 Reenactment) §45-23-20 wherein that court affirmed the decision of the Warwick Planning Board of Review[1] approving a proposed subdivision of land.

The appellants are the owners of single-family homes located in Warwick on all sides of a horseshoe-shaped street called St. George Court. Each corner of the shoe connects with Algonquin Drive. The court and its lots were platted by the Estate of Alice Francis Brown. The plat was recorded on October 2, 1939 and is known as "Governor Francis Farms Subdivision No. 2." All the lots located on Subdivision No. 2 are subject to a Declaration of Special Covenants and Restrictions recorded by the trustee under the will of Alice Francis Brown in July, 1941. Among the restrictions contained in the trustee's declarations is one which specifies that "[s]aid lots shall be used

---

[1]Section 45-23-14 allows a municipality to designate its zoning board as the planning board of review. Warwick has taken advantage of this option.

solely and exclusively for single family private residence purposes."

Sometime after 1954, there was an apportionment between the heirs of Alice Francis Brown of the land remaining in the estate. Consequently, Elizabeth F. B. Holton (Mrs. Holton) took title to lot 45 on Subdivision No. 2[2] and other parcels of land situated to the south and the east of the plat. Lot 45 is located at just about the deepest point of the horseshoe. Life on St. George Court remained comparatively tranquil until December, 1969 when the appellants were notified that Mrs. Holton was seeking the approval of the Warwick Planning Board for a proposed plat of land which was to be known as "Governor Francis Farms Subdivision No. 20." The plat was to be composed of 12 lots. Access to the new development was to be gained by the installation of a street to be known as Pin Oak Drive which would begin on St. George Court, cross over lot 45 and continue on for a total distance of 600 feet. Pin Oak Drive is designed as a cul-de-sac in that all vehicular traffic entering or leaving Subdivision No. 20 could do so only by traversing lot 45.[3] The new plat would be subject to restrictions identical to those governing the use of Subdivision No. 2.

Throughout this litigation, the residents of St. George Court have stressed that apart from lot 45 Mrs. Holton had other access routes to her proposed subdivision. One called for the use of the so-called Spring Green Road extension. Title to the extension is in Mrs. Holton and her brother with others having easements or other rights of passage over the way. Mrs. Holton said she approached the other parties having an interest in the extension but

---

[2]The Tax Assessor's records identify lot 45 as being lot 167 on Assessor's Plat 306.

[3]See Appendix.

they would not allow it to be used as a public street. The record is silent as to what was the extent of these negotiations. The trial justice found that this plan was not feasible since Mrs. Holton had no control of the private portion of Spring Green Road.

The appellants presented evidence that a roadway could be built entirely on Mrs. Holton's property which would give access to the 12 lots by way of Spring Green Road. This layout would cost more than the Pin Oak Drive concept—the cost was estimated as being in the neighborhood of $25,000. There was a difference of opinion between two engineers as to whether appellants' proposal would confront the residents of St. George Court with a drainage problem. The trial justice made no finding on this phase of the evidence.

The trial justice's findings, or lack of findings, as to alternate routes of access available to Mrs. Holton is not crucial to the present controversy. The determinative issue of this appeal is: whether the restriction which states that the lots on Subdivision No. 2 shall be used solely and exclusively for single-family residence purposes prevents Mrs. Holton from constructing a street across lot 45 which will give access to homes to be built on her new plat. We believe that it does.

The residents of St. George Court and Mrs. Holton have presented us with an impressive array of decisions which they maintain support their respective positions. Most of their references can be found in 25 A.L.R.2d 904 (1952) and its Later Case Service. We shall first discuss five of the cases cited by Mrs. Holton. As to be expected, the cases to which she alludes support the use of lots restricted to residential use as roadways to reach similarly restricted property.

In *Anderson* v. *Lynch*, 188 Ga. 154, 3 S.E.2d 85 (1939), it was a governmental unit which was seeking to use a

lot as a connector road between two residential developments. In the case before us, we are not concerned with any effort by the city of Warwick to acquire lot 45 for highway purposes. In fact, the court in *Anderson* specifically noted that it was not deciding the question of the enforceability of the restrictive covenants "between the parties thereto and their successors with notice."

In *Callaham* v. *Arenson,* 239 N. C. 619, 80 S.E.2d 619 (1954), the owner of a certain plat submitted a replat wherein a portion of two lots would be a street which would service the lots in the original plat. On these facts, it was held that there was no violation on the restriction limiting the use of the lots to residential purposes.

Another case cited to support Mrs. Holton's contention is *Bove* v. *Giebel,* 169 Ohio St. 325, 159 N.E.2d 425 (1959). There, the defendant, who owned a six-acre parcel of land abutting a plat whose lots were restricted "for residence purposes only," purchased a 25-foot strip over one of the lots. This gave him a private drive so that the occupants of two residences to be built on the rear acreage could have a means of ingress and egress. The defendant had agreed that the plat restrictions could be applied to his parcel. The Ohio Supreme Court observed that the covenant did not limit the use of the property to residence purposes within the subdivision only, and that if that had been the developer's intent, it should have been so expressed. The limitation promulgated by Mrs. Holton's benefactor is more restrictive than the one in *Bove.* It should also be noted that in *Bove* the defendant built a private drive which connected with a through street.

In *Raleigh Court Corp.* v. *Faucett,* 140 Va. 126, 124 S.E. 433 (1924), there is no evidence of covenant similar to the one that governs the use of the lots abutting St. George Court. There was no recorded plat. The defendant vendor in the *Raleigh* case had expressly reserved the right to

238

modify the plan by changing the location of the streets shown on the plan. Furthermore, the proposed street, like the road in the *Callaham* case, was within the original plat. It would serve the needs of the residents in the plat in that it provided easier access to the lots within the plat.

We concede that, in order to increase the free use of land, restrictive covenants are to be strictly construed. *Emma* v. *Silvestri*, 101 R. I. 749, 227 A.2d 480 (1967). However, this rule is applicable only in those instances where the limitation in issue is unambiguous. It will not be used to destroy the very purpose for which the restriction was established. Proper regard must be had for the intent of the parties. Cases involving restrictive covenants present such a wide spectrum of differing circumstances that each case must be decided on *ad hoc* basis. *Edgewood Park Ass'n* v. *Pernar*, 350 Mich. 204, 86 N.W.2d 269 (1957).

We would point out that the restriction in dispute is designed to protect property values within appellants' plat and insure the marketability of their homes should they be offered for sale. *Thodos* v. *Shirk*, 248 Iowa 172, 79 N.W. 2d 733 (1956). For the benefit of this restriction, the residents of St. George Court have paid top dollar—not only to their predecessors in title but they continue to do so annually to the Warwick Tax Assessor. We will not, therefore, seek ambiguity where none exists but rather we will effectuate the purposes for which the restriction was established.

We think it clear that the permitted residential use to which lot 45 can be put is as a site for a single-family residence, and such other use as may be incidental to the occupation of the structure as a home. The restrictions imposed upon Subdivision No. 2 are for the benefit of that subdivision and no other. If the lots are restricted to a residential use only, it means they are restricted to a residential use which is carried on within that subdivision.

The existence of the street over lot 45 is not incidental to the residential use of property within Subdivision No. 2. The proposed street is not a single-family home nor was it designed to serve any of the residences having a St. George Court address. For cases supporting our conclusion, we shall cite *Thompson* v. *Squibb,* 183 So.2d 30 (Fla. App. 1966); *Eisenstadt* v. *Barron,* 252 Md. 358, 250 A.2d 85 (1969); *Long* v. *Branham,* 271 N. C. 264, 156 S.E.2d 235 (1967); *Donald E. Baltz, Inc.* v. *R. V. Chandler & Co.,* 248 S. C. 484, 151 S.E.2d 441 (1966).

The appellants' appeal is sustained. The judgment appealed from is vacated and the case is remanded to the Superior Court for the entry of judgment enjoining the use of lot 45 as a street supplying both an entranceway to and exit from Mrs. Holton's plat.

Mr. Justice Joslin did not participate.

Mr. Justice Powers participated in the decision but retired before its publication. Mr. Justice Doris did not participate.

*Tillinghast, Collins & Graham, Edwin H. Hastings,* for appellants.

*Edwards & Angell, John H. Blish,* for appellee, Elizabeth F. B. Holton.

# APPENDIX*

*The sketches appearing in this appendix are not drawn to scale. Hopefully, they afford one with a better insight as to the locus of the controversy.