306 A.2d 806.

RICHARD L. FARRELL *et ux. vs.* MEADOWBROOK CORPORATION.

JULY 9, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

KELLEHER, J. The defendant corporation (Meadowbrook) is before us on an appeal from a judgment entered in the Superior Court after a nonjury trial enjoining Meadowbrook from building a series of garden apartment buildings in a portion of the Garden City section of Cranston.

To most Rhode Islanders, the name Garden City describes an exclusive well-planned residential development located in Cranston and lying between Pontiac Avenue on its east and Reservoir Avenue on its west. The plaintiffs own a single-family home. Its address is "268 Lawnacre Drive, Garden City, Cranston." From a legal point of view, the Farrells' property is designated as lot 129 on a recorded plat entitled "Garden City, Section No. 4, Cranston, Rhode Island, belonging to Garden City Builders, Inc., Peter V. Cipolla, Engineer, August 1951." Lot 129 is a 79 x 100 foot parcel of real estate. It is typical of the lots found on this plat. The Farrells purchased their home in November, 1954.

Meadowbrook is the owner of lot 144. It is not a typical lot as it measures 11.7 acres in area. A portion of lot 144 is swampy, while another portion becomes inundated when the Pocasset River overflows its banks. Meadowbrook purchased this property on June 22, 1971. Both the Farrells and Meadowbrook purchased their respective lots from the original developer, Garden City Builders, Inc. (Garden City Builders). The Farrells' property abuts the Meadowbrook land. Entrance to lot 144 is had by way of a 50-foot strip of land which fronts on Lawnacre Drive.

The Farrells rest their suit upon a recorded-plat restriction which provides that "No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed two and one half stories in height and a detached garage for not more than two cars." "[R]esiden-

tial building plot" is not defined. The various lots which appear on the plat map are identified by number, not type. It is agreed, however, that at the time the plat was recorded, the area it depicts was zoned residential.

We agree with the trial justice when he remarked that the very size of lot 144 creates an ambiguity as to whether lot 144 was to be considered the site for one single-family residence or as a location on which several one-family homes could be built. Recorded plats are writings that come within the interdictions of the parol evidence rule. *Swanson* v. *Gillan,* 54 R. I. 382, 173 A. 122 (1934). However, the rule presupposes a clearly written unambiguous document. The trial justice was justified in considering parol or extrinsic evidence as to the intent of the developer to resolve the future use of the 11.7-acre lot. *Hawkins* v. *Smith,* 105 R. I. 669, 254 A.2d 747 (1969).

Testimony was given by several property owners to the effect that when they purchased their conventionally-sized lots from Garden City Builders, they were told by officials and sales personnel of the developer that it was very unlikely lot 144 would ever be used but that if it were, it would be subject to the same restrictions as all of the other lots on the plat.

Witnesses who were active in the sale of lots on the Section 4 plat denied that they had ever told any of the purchasers that the 11-plus acres were to be devoted to single-family homes.

The Farrells presented evidence which showed Garden City Builders, in its development of other residential areas in Cranston, filed declarations of special covenants and restrictions which, while they were similar to those covering Section 4, had specifically exempted various parcels of real estate in each development from the restrictive covenants contained in each document.

The trial justice was presented with contradictory evi-

dence. He found that the original developer had intended that lot 144 might be subdivided into several lots upon each of which could be built a one-family home. We cannot fault his judgment. Controversies involving the interpretation of restrictive covenants must be decided on a case-by-case basis. *Hanley* v. *Misischi*, 111 R. I. 233, 302 A.2d 79 (1973). In the case at bar, the credibility of the witnesses was a crucial factor. Credibility is a matter that lies within the exclusive province of the trial court, not the appellate court. Furthermore, we have in *Misischi* emphasized that the restriction presently in issue not only protects a property owner's investment but also increases the marketability of his home and since his purchase was undoubtedly motivated by the presence of such a restriction, the owner should have some assurance that the restriction will be fairly and faithfully applied.

Meadowbrook can take little solace in the fact that lot 144 has been rezoned so that it can be used for multifamily dwellings. A zoning ordinance cannot destroy the force and effect of a restrictive covenant. *Hill* v. *Ogrodnik*, 83 R. I. 138, 113 A.2d 734 (1955). When defendant purchased lot 144, it was aware, at least constructively, of the restrictions relating to the use of this land.

On the record before him, the trial justice found that Garden City Builders, by its platting of the land in Section No. 4 and recording of the restrictions, had intended to provide a uniform development solely devoted to single-family dwellings. The Farrells could enforce the restrictions against Meadowbrook. *Noonan* v. *Cuddigan*, 85 R. I. 328, 131 A.2d 241 (1957). The defendant has failed to persuade us that the trial justice in reaching the result that he did was clearly wrong.

The defendant's appeal is denied and dismissed.

Mr. Justice Joslin did not participate.

*Edward W. Day, Jr.,* for plaintiffs.

*Bourcier & Bordieri, John P. Bourcier, Joseph F. Penza, Jr.,* for defendant.