Michael HOULIHAN et al.

v.

ZONING BOARD OF REVIEW OF the TOWN OF NEW SHOREHAM et al.

No. 98–281–M.P.

Supreme Court of Rhode Island.

Oct. 12, 1999.

Nicholas Gorham, North Scituate, for Plaintiff.

Donald J. Packer, Peace Dale, Stephen M. Prignano, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This matter is before us on a petition for certiorari to review an order of the Superior Court entered on July 8, 1999, denying the request of the petitioners, Michael and Mary Houlihan (Houlihans), for a preliminary injunction. Pursuant to the petition we issued our writ and in response thereto the pertinent records have been certified to this Court. That record indicates that the July 8, 1999 order denying the Houlihans' request for preliminary injunctive relief was premised entirely upon a finding by the trial justice that the Houlihans lacked any standing to enable them to seek compliance on the part of the respondents, John and Helen Lynch (Lynches), with restrictive plat-lot-use covenants contained in the respective deeds of the parties. The single issue that we consider is whether the trial justice abused her discretion and erred in finding that the petitioners lacked any standing to seek injunctive relief against the respondents.

### I

### Case Facts

The Houlihans and the Lynches are adjoining property owners in the cluster subdivision known as Sheffield Farm, a nine-lot residential subdivision located on Block Island in the town of New Shoreham. The Houlihans own lot G and the Lynches own lot F. Each of the parties purchased lots subject to a series of thirteen recorded plat-lot-use restrictions. In this proceeding only two of those restrictions are pertinent for purposes of this review.

"1. Said premises shall be used only for residential purposes and no building or other structures shall be erected, altered, placed or permitted to remain on the aforesaid premises other than *one single-family dwelling house, together with a connected or unconnected private garage.*"

\*\*\*\*\*\*\*\*

"10. *No dwelling or connected or un-connected garage or any other appurte-nance shall be constructed or located on said premises unless the plans therefor (and said plans shall include a full and adequate description of the materials to be used) shall first have been submitted to and approved in writing by the Grantor herein or his nominee or his successors and assigns; provided, how-ever, that such approval shall not be withheld unreasonably.*" (emphases add-ed.)

In November 1998, the Lynches sought permission from the town of New Shore-ham's building official to construct a "de-tached garage with one story stor-age/study/work above" upon their lot.[1] The plans for the garage show it to be a twenty-two by twenty-five foot, two-story building, standing in excess of twenty-one feet in height. The second-floor level of the garage building appears to be divided into four rooms, one of which is proposed as a study. The second level additionally proposes sliding glass doors leading out onto a twenty-eight foot long wood-plank deck.[2] The proposed garage building would actually constitute a third building on the Lynches' lot. The town's building official approved and granted the Lynches' request for the building permit.

The Houlihans first learned of the Lynches' building permit in April 1999. They promptly filed an appeal, contesting the issuance of the building permit, with the New Shoreham Zoning Board of Re-view. On June 3, 1999, that board denied their appeal, and the following day, the Houlihans filed an appeal in the Washing-ton County Superior Court. In that ap-peal they sought injunctive relief to cur-tail any further construction of the Lynches' garage. On June 22, 1999, after hearing commenced on the Houlihans' re-quest for preliminary injunction, the trial justice immediately concluded that the Houlihans lacked any standing to enforce the recorded plat-restrictive covenants and summarily denied their request for preliminary injunction. This petition for certiorari followed, and we enjoined the further construction of the proposed ga-rage.

II

Analysis and Review

■ In this proceeding we limit our re-view to the determination of whether the trial justice abused her discretion and erred in concluding that the Houlihans lacked standing. *Paramount Office Sup-ply Co. v. D.A. MacIsaac, Inc.,* 524 A.2d 1099, 1101 (R.I.1987). In so doing, we re-view the record to determine

"whether the hearing justice considered and resolved each of the appropriate preliminary-injunction factors without abusing her discretion in doing so. Thus, in deciding whether to issue a preliminary injunction, the hearing jus-tice should determine whether the mov-ing party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hard-ships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo."

1. At hearing before us, there appeared some confusion regarding the existence and loca-tion of a garage that is presently available to the Lynches on their lot. The record and photograph exhibits disclose to us that a drive-in basement garage is part of the dwell-ing house presently existing on the lot. In addition, sometime in 1993, the Lynches con-structed a separate building on their lot.

2. The proposed two-story garage in this case appears to be second cousin to the unique garage style found in *Zeilstra v. Barrington Zoning Board of Review,* 417 A.2d 303 (R.I. 1980).

*Iggy's Doughboys, Inc. v. Giroux,* 729 A.2d 701, 705 (R.I.1999) (per curiam).

In this case we note that the trial justice predicated her denial of the Houlihans' request for preliminary injunction on the bare finding that they lacked any standing to enforce the restrictive plat covenants and thus had no reasonable likelihood of succeeding on the merits of their complaint. That limited finding and conclusion serves to whittle the issue before us down to the question of whether the Houlihans possessed requisite standing to seek injunctive relief. We conclude that they did and that the trial justice erred in finding that they lacked such standing on the basis of the trial record then existing at the time of her ruling.

This Court has long recognized that when recorded plat-lot restrictions appear intended to provide for a uniform development and use of platted subdivision lots, any one of the plat-lot owners may seek judicial assistance to compel compliance by another lot owner with the restrictive covenants. *Farrell v. Meadowbrook Corp.,* 111 R.I. 747, 750, 306 A.2d 806, 808 (1973); *Emma v. Silvestri,* 101 R.I. 749, 753, 227 A.2d 480, 481 (1967) (citing *Noonan v. Cuddigan,* 85 R.I. 328, 333–34, 131 A.2d 241, 244 (1957)).[3] In addition, as regards the recorded restriction No. 10, reserving approval of plans and building materials to the "Grantor," this Court has noted that such reservation of approval in a grantor could very well be "consistent with an intention to use the power reserved to fortify the restrictions imposed upon the several lots." *Emma,* 101 R.I. at 754, 227 A.2d at 482.

We are satisfied that the Houlihans have the required standing to present their evidence to a trial justice in an attempt thereby to show that the Lynches' proposed garage will be in violation of Sheffield Farm's lot-use restrictions covenants.

Therefore, the petition for certiorari is granted. The order of the Superior Court entered on July 8, 1999, denying the petitioners' motion for preliminary injunction is quashed, and the papers in this case are remanded to that court for further proceedings with our decision endorsed thereon.

---

3. *See generally,* Maurice T. Brunner, Annotation, *Who May Enforce Restrictive Covenant or Agreement as to Use of Real Property,* 51 A.L.R.3d 556 (1973) and (Supp.1999).