Paul M. **MARTELLINI** et al.

v.

**LITTLE ANGELS DAY CARE, INC.,** et al.

No. 2002–597–Appeal.

Supreme Court of Rhode Island.

March 18, 2004.

William M. Dolan, III, Providence, for Plaintiff.

Daryl Dayian, Providence, for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

FLAHERTY, Justice.

The fate of a family day care home in a residential subdivision in the town of Johnston and the enforcement of a restrictive covenant threatening its continued operation are the subjects of this dispute. A justice of the Superior Court granted summary judgment in favor of the defendant day care home and its operators. Two aggrieved neighbors appealed that judgment. We reverse.

## Facts and Procedural History

Several neighbors living on or around Paula Lane, Johnston, brought suit against defendants, a family day care home called the Little Angels Day Care, Inc., its sole officer and care provider, Carol M. Breault, and her husband, Michael A. Breault (hereinafter defendants). The Breaults reside at 6 Paula Lane, where the family day care home operates from a finished basement and fenced-in yard. Little Angels is approved to care for "8 children, no more than 4 under 18 months" pursuant to a license issued by the Department of Children, Youth, and Families.[1] In June 2001, Carol Breault applied to the Town of Johnston for a license to operate a business.[2] Several neighbors opposed issuance of the license. They submitted a petition to the town voicing concern over the alleged violation of the protective covenant recorded in their residential subdivision. The town council tabled the matter and, to date, no vote has been taken on the license application. In the meantime, however, Little Angels continues to operate.

Looking for relief from the courts, approximately fourteen neighbors sought a Superior Court injunction ordering the cessation of "all business activities," including family day care services, on the Breault property. The plaintiffs alleged a violation of the restrictive covenant governing the parties' property, which states that "[s]aid premises shall be used solely and exclusively for single family private residence purposes."[3] A justice of the Superior Court granted summary judgment in favor of defendants after the parties agreed that no issues of material fact remained in dispute.[4] In so ruling, the justice determined that "this is a plain old, regular daycare facility, caring for up to eight children as permitted by the zoning laws and that it is sufficiently analogous to the *Gregory* case for the [c]ourt to conclude the restrictive convenant [*sic*] does not apply as a matter of public policy." The motion justice relied on this Court's decision in *Gregory v. State Department of Mental Health, Retardation and Hospitals,* 495 A.2d 997 (R.I.1985), in which a proposed group home for six mentally re-

---

1. Carol Breault obtained a DCYF family day care home license for the care of "6 children, no more than 4 under 6 years nor 2 under 18 months" on May 31, 2001. On September 1, 2001, this license was amended to allow eight children. A license is required pursuant to G.L.1956 § 42–72.1–4.

2. According to defendants, the building inspector for the Town of Johnston certified the home as permitted under residential zoning restrictions governing subdivisions.

3. A deed restriction was duly recorded in September 1996 by the developer of the Paula Lane subdivision. It reads in relevant part:
 "Restrictions and protective covenants imposed upon 'final plan Colonial Estates—Paula Lane—in Johnston R.I. presently recorded as assessor's plat 47/2 lot 15 for Anco Builders, Incorporated—owner/developer.
 " * * *

"1. Said premises shall be used solely and exclusively for single family private residence purposes. No building or structures shall be erected or reconstructed upon said premises unless or until the grading plan of the lot * * *."
 " * * *

"8. These restrictive covenants shall become and remain effective for a minimum period of twenty (20) years from the date of recordation with the Town Clerk's Office in the Town of Johnston, State of Rhode Island."

4. The plaintiffs filed a motion for summary judgment and defendants opposed said motion. At the hearing on plaintiffs' motion defendants orally moved for a cross-motion for summary judgment at the suggestion of the hearing justice. The plaintiffs did not object at that time, and they further acquiesced to this procedure at oral argument held before this Court.

tarded adults was held not to contravene a restrictive covenant limiting the real estate lot to "*only a single one-family dwelling house * * * [to be used] for private residential purposes only.*" *Id.* at 998. In that case, the Court determined that the home had the primary purpose and function of a family housekeeping unit and that compensation for services performed there did not render its activities commercial in nature. Moreover, the Court held that the group home did not threaten the day-to-day activities of the surrounding homes and that the quality of life and character of the neighborhood would still be preserved. *Id.* at 1001–02.

In addition to *Gregory,* the motion justice relied on the state zoning law that affirmatively allows operation of family day care homes in residential areas. General Laws 1956 § 45–24–37, entitled "General provisions—Permitted uses," states the following in subsection (b) concerning zoning ordinances for towns and cities:

> "Notwithstanding any other provision of this chapter, the following uses are permitted uses within all residential zoning use districts of a municipality and all industrial and commercial zoning use districts except where residential use is prohibited for public health or safety reasons: (1) Households; (2) Community residences; *(3) Family day care homes.*" (Emphasis added.)

Section 45–24–31(18) defines "*Family Day Care Home*" as "Any home other than the individual's home in which day care in lieu of parental care or supervision is offered at the same time to six (6) or less individuals who are not relatives of the care giver, but may not contain more than a total of eight (8) individuals receiving day care." [5] Based on public policy demonstrated by decisional and statutory law, the motion justice deemed the restrictive covenant inapplicable to Little Angels. We do not agree, and hold that defendants' family day care home is subject to the straightforward language of the restrictive covenant at issue in this case.

Two of the fourteen plaintiffs below, Paul M. Martellini and Karen L. Luis,[6] appealed to this Court on the limited legal issue of whether the operation of the family day care home violated the restrictive covenant, which limits the use of the Paula Lane properties for "single family private residence purposes." They take issue with the motion justice's construction of the covenant and her decision regarding its application and enforceability. The plaintiffs assert that the restrictive covenant is unambiguous and that it bars the operation of any business from property on Paula Lane. They argue that the Breault home is not being used "solely and exclusively" as a single-family private residence, as required by covenant, and that the restriction legitimately prevents defendants from using their property as fully as zoning laws might allow. Finally, plaintiffs deny defendants' suggestion that enforcement of the restriction would be inequitable due to the unclean hands of other Paula Lane residents who allegedly maintain business addresses or activities at their homes.

---

**5.** In an affidavit in opposition to plaintiffs' motion for summary judgment, Carol Breault stated that eight children are enrolled at Little Angels and that two of the children are related to her by blood. Hence, it appears that Little Angels is a "family day care home" under the definition provided by zoning law and does not fall under the category of "day care center," which is considered a different category of day care facility and may accommodate more than eight children. *See* G.L. 1956 § 45–24–31(17).

**6.** Henceforth, reference to plaintiffs will be limited to the two appellants, Mr. Martellini and Ms. Luis.

The defendants maintain that the restrictive covenant is unenforceable and inapplicable for a number of reasons. They contend that it is inapplicable as to them because they did not receive actual or constructive notice of the restrictive covenant from their deed. Moreover, they allege that other Paula Lane residents operate business activities out of their homes and that plaintiffs therefore are barred from enforcing the restriction based on the doctrine of unclean hands. While they characterize the language of the covenant as ambiguous, they nonetheless contend that operation of the family day care home is consistent with the covenant, is authorized by zoning law, and is consistent with applicable case law. They further commend the hearing justice's articulation of public policy and urge us to agree that children are best raised in a family setting such as that found at Little Angels on Paula Lane.

### The Restrictive Covenant

 Before determining if the restrictive covenant impacts the operation of Little Angels, we first must consider whether the covenant is valid and applicable to these defendants. We conclude defendants' claim of lack of notice and unclean hands to be without merit. Although defendants may have been without actual notice of the restrictive covenant from their deed, they were certainly on constructive notice of the restrictive covenant for the subdivision that was duly recorded in September 1996 and that specifically affected their property. Any competent title search would have revealed these restrictions on the use of the properties in the subdivision. The defendants' assertions of arbitrary enforcement and unclean hands are likewise of no assistance to them. First, based on the record before us, the so-called business activities of other Paula Lane neighbors, plaintiffs below who are not party to this appeal, appear at best

to be merely incidental to the residential use of their homes. Moreover, the appellants are correct that "[i]t is only when the plaintiff's improper conduct is the source, or part of the source, of his equitable claim, that he is to be barred because of this [bad] conduct." *Rodrigues v. Santos,* 466 A.2d 306, 311 (R.I.1983) (quoting Dobbs, *Handbook on the Law of Remedies* 46 (1973)). Hence, because plaintiffs' alleged business activities are not in any way the source of their equitable claim, the doctrine of unclean hands is unavailing for defendants as a bar to plaintiffs' claim.

### Propriety of Summary Judgment

 Having disposed of those arguments, we now look to see if summary judgment was properly denied to plaintiffs and granted to defendants. We review the grant of summary judgment on a *de novo* basis, *see Johnson v. Newport County Chapter for Retarded Citizens, Inc.,* 799 A.2d 289, 291 (R.I.2002) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996)). We look only to the legal issues before us, as the parties agree that no genuine issues of material fact remain in dispute. We must decide whether the valid restrictive covenant affecting Paula Lane precludes the operation of a family day care home such as Little Angels and, if so, whether such a restriction is unenforceable as against public policy.

 We begin our analysis by interpreting the terms of the restrictive covenant at issue. In so doing, it is worthy of mention that although we may look for guidance from other cases in which restrictive covenants are interpreted, we must decide this case on an ad hoc basis because each case presents "such a wide spectrum of differing circumstances[,]" *see Hanley v. Misischi,* 111 R.I. 233, 238, 302 A.2d 79, 82 (1973), and because "the specific effects of

applying restrictions can vary, depending on the land and covenants involved[.]" *Ridgewood Homeowners Association v. Mignacca,* 813 A.2d 965, 971 (R.I.2003); *see also Belliveau v. O'Coin,* 557 A.2d 75, 77 (R.I.1989); *Gregory,* 495 A.2d at 1000–01. Notwithstanding the somewhat elastic nature of this analysis, there are principles to which we must adhere in making this interpretation. We construe the terms of any restrictive covenant "in favor of the free alienability of land while still respecting the purposes for which the restriction was established." *Gregory,* 495 A.2d at 1000 (citing *Hanley,* 111 R.I. at 238, 302 A.2d at 82 and *Emma v. Silvestri,* 101 R.I. 749, 751, 227 A.2d 480, 481 (1967)). Moreover, in those instances when the limitation in issue is unambiguous, restrictive covenants are to be strictly construed. *Hanley,* 111 R.I. at 238, 302 A.2d at 82. "[W]e will not * * * seek ambiguity where none exists but rather we will effectuate the purposes for which the restriction was established." *Mignacca,* 813 A.2d at 972 (quoting *Hanley,* 111 R.I. at 238, 302 A.2d at 82).

■■■ Upon examination of the language of the restrictive covenant in the case before us, we note that the covenant clearly states: "Said premises shall be used solely and exclusively for single family private residence purposes."[7] We are mindful that, "[a]s in statutory construction, these words should be given their plain and ordinary meaning unless a contrary intent is discernable from the face of the instrument." *Gregory,* 495 A.2d at 1001. On its face, the terms of the restrictive covenant are unambiguous. We are therefore constrained to interpret this lim-itation in its literal sense. By use of the words "solely and exclusively," the limitation precludes business or commercial activities in the restricted areas. *See Woodvale Condominium Trust v. Scheff,* 27 Mass.App.Ct. 530, 540 N.E.2d 206, 209 (1989) (interpreting the word "solely" in a restrictive master deed to be preclusive rather than merely descriptive); *see also Metzner v. Wojdyla,* 125 Wash.2d 445, 886 P.2d 154, 157 (1994) (noting that the term "residential" was the antonym of "business").

Moreover, we understand "residential purposes" and "single family private" to mean that which is logically inferred from use of the words, as is consistent with this Court's previous interpretation of the same language. In *Gregory,* we interpreted the words "private residential purposes" and "one-family dwelling house," as used in a restrictive covenant very similar to the one now before us. In that case, we looked to other jurisdictions for guidance on the meaning of these words to determine whether a residential group home violated the restrictive covenant. In general, we agreed that a building used for residential purposes is one in which people make their homes, and one in which a permanent residence is established, as opposed to one in which a business is conducted. *Gregory,* 495 A.2d at 1001. Additionally, we interpreted a single-family dwelling to be one in which the home looks like all other single-family homes in the neighborhood in size, appearance and structure, and one in which a characteristically traditional family operates as a single household unit. *Id.* at 1001–02. Although defendants correctly argue that the Breault family permanently resides at the home,[8] and that the home

---

7. The covenant would have had stronger force if the language explicitly prohibited commercial or business uses. However, rather than merely permit residential use, the covenant permits this use "solely and exclu-sively." We consider this restrictive language an indication that a prohibition on business or commercial uses was intended.

8. Some courts have opined that even though the operator of a child-care center "also re-

itself is no different in size, appearance and structure than when the home was not used as a family day care home,[9] there is no question that the home also functions as a for-profit business to which a fee is paid for the care of children, and where vehicles enter and exit the area twice daily to pick up and drop off children for this care. The character of the neighborhood is invariably altered by these activities. *See Woodvale Condominium Trust,* 540 N.E.2d at 209 ("The modesty of the traffic does not alter that such regular arrivals and departures are not usual incidents of residence.").

Although we rely on *Gregory* for guidance in language interpretation, the circumstances and public policy concerns attendant to that case are unique and we must distinguish it from the matter now before us. In *Gregory,* the six unrelated adults chosen to reside under one roof planned to live in a family-type setting and make the dwelling their permanent home. While not a traditional family unit, the residents would operate as a single household unit bearing the characteristics of a traditional family. The group home was not for profit and not commercial in nature; the incidental necessities that required businesslike record keeping and payments were collateral to the prime purpose and function of the home. *Gregory,* 495 A.2d at 1001–02. This use was permissible not merely on public policy grounds, but because it "[would] not con-

travene the requirements or the spirit of the restrictive covenant[.]" *Id.* at 1002.

In contrast, the Little Angels family day care home is comprised of eight occupants who neither permanently reside there nor engage in traditional family activities beyond the limited daytime hours when they pay for care. It is telling that defendants are required to obtain a *business* license from the Town of Johnston. The situations markedly differ.

### Public Policy Considerations

 It is true that by its 1991 enactment of zoning ordinance law, § 45–24–37, which permits family day care homes in residential zoning use districts, the Legislature enunciated a policy permitting the placement of family day care homes in all residential zones of all municipalities. We acknowledge that the Legislature made a deliberate distinction between family day care homes comprising of no more than eight children, like Little Angels, and larger "day care center[s]," which are not afforded the same liberal permissive placement in residential zoning use districts. *See* §§ 45–24–31(17) and 45–24–37. These actions by the Legislature should be construed as encouraging and favoring the unencumbered location of child-care homes throughout the state. However, we must also realize that the Legislature has enacted no provisions voiding any covenants that prohibit businesses, including family day care homes.[10] Additionally, this Court

---

sides in the house is irrelevant to the question of whether it is utilized for a nonresidential purpose." *Berry v. Hemlepp,* 460 S.W.2d 352, 353 (Ky.1970).

9. The Breaults did erect a privacy fence, refinish their basement, and pave a walkway for the purpose of accommodating a family day care home, however, these changes are common improvements to any residential home and do not decisively factor into our conclu-

sion that the day care home violated the restrictive covenant.

10. The California, Minnesota, and New Jersey Legislatures have enacted provisions voiding any covenants that prohibit family day care homes. *See Terrien v. Zwit,* 467 Mich. 56, 648 N.W.2d 602, 610, n. 18 (2002) (referring to Cal. Health & Safety Code § 1597.40 (West 1981); Minn.Stat. § 245A.11(2) (West 1987); N.J. Stat. Ann. § 40:55D–66.5b(a) (West 1992)).

has previously said that "[a] zoning ordinance cannot destroy the force and effect of a restrictive covenant." *Farrell v. Meadowbrook Corp.,* 111 R.I. 747, 750, 306 A.2d 806, 808 (1973). For these reasons, we are bound by the terms of the restrictive covenant regulating the use of defendants' property; the terms of the zoning ordinance do not trump the force and effect of the restrictive covenant.

 While we recognize public policy favors the operation of family day care homes, we also must observe the strong competing public policy of supporting the right of property owners to create and enforce covenants affecting their property. *See Terrien v. Zwit,* 467 Mich. 56, 648 N.W.2d 602, 611 (2002) (holding that restrictive covenant precluding operation of a family day care home did not violate public policy of state and noting considerable public policy regarding freedom of contract). This Court previously has held that this type of restrictive covenant "not only protects a property owner's investment but also increases the marketability of his home." *Farrell,* 111 R.I. at 750, 306 A.2d at 808 (referencing *Hanley*). Also, since a property owner's purchase is sometimes motivated by the presence of such a restriction, the owner "should have some assurance that the restriction will be fairly and faithfully applied." *Id.* We agree with the court in *Berry v. Hemlepp,* 460 S.W.2d 352, 354 (Ky.1970), that "[t]o dilute a positive residential restriction by condoning socially desirable violations is to impair [the legal property rights of others] and create an unwarranted uncertainty in the law." We decline to do so today.

The defendants' business activity contravenes the requirements and the spirit of the restrictive covenant the plaintiffs seek to enforce. We hold that, as a matter of law, summary judgment should have entered in favor of the plaintiffs. By so holding, we effectuate the purpose for which the restriction was established. The restrictive covenant affecting Paula Lane properties precludes the operation of the family day care home in question. It is a business in contravention of the unambiguous terms of limitation in the covenant. Although the public policy of the state laudably encourages the siting of family day care homes in residential zones, it cannot bar enforcement of this restrictive covenant. The right of the plaintiffs to create and enforce covenants affecting their property has greater force and effect in this instance.

## Conclusion

For the reasons stated above, we reverse and vacate the judgment of the Superior Court. We remand the record to the Superior Court with instructions that judgment be summarily entered in favor of the plaintiffs.