[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court are cross motions for summary judgment involving the applicability of restrictive covenants. Plaintiffs and Defendants own property surrounding Yawgoo Mill Pond. Jurisdiction is pursuant to G.L. 1956 § 8-2-14 and Super. Ct. R. Civ. P. Rule 56.
 FACTS
Plaintiffs are the Dorset Mill Partnership (Partnership) and the partners of said partnership individually, who own parcels of land abutting Yawgoo Mill Pond (Pond) in Exeter. Defendants Bos-Ten, LLC and various individual property owners also own property abutting or surrounding the Pond. Defendant Dorset Mill Pond Property Owner's Association, Inc. (Pond Association) is a voluntary non-profit corporation consisting of some but not all of the owners of parcels that abut the Pond.
The Pond, which is fed by the Chipuxet River, contains a dam that has deteriorated over time and required repair. In 1983, Pare Associates performed a survey of the north portion of the dam and spillway, and recommended repair. Such repairs, however, were not made for some reason. In May 2000, the Rhode Island Department of Environmental Management (DEM) inspected the dam and listed its condition as "fair to poor." On December 14, 2000, Pare Engineering Corp. sent a proposal for engineering services for the dam repair. A day later, on December 15, 2000, DEM sent a letter to the Pond Association stating that the dam would become a significant or high hazard dam and required a report be submitted as to the dam's condition. DEM requested a recommended method of repair, a schedule by which the dam would be repaired, and required the water level to be returned to normal. Pare Engineering again made a proposal for services in March 2001. The President of the Pond Assoc. sent an e-mail to Mr. William Bivona (of the Partnership) stating that the Association could not promise to reimburse the Partnership for repair work.
Repair work to the dam commenced in 2001 and up to the present, completed repairs have been paid for by the Pond Association and the Partnership. In April 2003, the Partnership sent a copy of the Pare Engineering report to DEM. Leaks in the dam continued to worsen and the dam's overall condition deteriorated further. In June 2004, Pare Engineering provided an estimate of $109,000 for actual construction work.
A restriction in the deeds in the chains of title of each of the abutters to the Pond contains the following language:
 This parcel is conveyed subject to the obligation to share on a Pro Rata Basis the cost of maintenance or repair of the Dam on Yonker Mill Pond also known as Yawgoo Mill Pond if any such repair is required. This obligation shall be shared on an equal basis with all lot owners who have frontage on the aforesaid pond. When a majority of the lot owners with frontage on the pond vote that such work is needed, or if required by a Governmental Agency, or recommended by a suitable engineering firm, it shall be undertaken.
A question has arisen as to whether the aforementioned restriction appears in all deeds of the abutters, because Defendants D'Olivo and Mowry allege that their deed does not contain such a restrictive covenant.
 ANALYSIS
Plaintiffs argue that the restrictive covenant is found in the chain of title of all Defendants and therefore Plaintiffs have the right to seek judicial enforcement of said covenant. Plaintiffs further argue that other various covenants and restrictions found in the deeds were given termination dates, but the restrictive covenant for dam maintenance was not, and is still valid. Plaintiffs argue that the covenant was made for the benefit of all the lots because each lot with frontage must contribute on a pro rata share. Thus, Plaintiffs believe that the covenant triggers a mandatory obligation of all lot owners with frontage to contribute on a pro rata and equal basis.
Defendants Bos-Ten, LLC et al. argue that the restrictive covenants contained in the deeds are not enforceable. Defendants argue that "mutuality of benefit is a fundamental component" of restrictive covenants, without which, courts will not enforce said covenants. Defendants believe there is a lack of mutuality of benefit and burden in this case. Defendants also argue that said covenants do not "touch and concern the land" and are therefore personal, rather than those which "run with the land" and bind successors and assigns. Defendants D'Olivo and Mowry allege that said restrictive covenant appears nowhere in the chain of title for their deed, except in one instance, which they argue was due to scrivener's error. Secondly, Defendants argue that the language of the restrictive covenant at issue clearly obligates only those owners who have frontage on the Pond, and since these Defendants do not, they cannot be obligated to pay.
Our Supreme Court has long "recognized that owners may enforce restrictive covenants on land burdened by the same restrictions as their land, when the purpose of the covenants is to maintain a common scheme of development. . . ." Ridgewood Homeowners Assoc.v. Mignacca, 813 A.2d 965, 971 (R.I. 2003); see alsoHoulihan v. Zoning Bd. of Review of Town of New Shoreham,738 A.2d 536, 538 (R.I. 1999) (holding "owners may seek judicial assistance to compel compliance by another lot owner with the restrictive covenants"). Our Supreme Court has also "observe[d] the strong . . . public policy of supporting the right of property owners to create and enforce covenants affecting their property." Martellini v. Little Angels Day Care, Inc.,847 A.2d 838, 845 (R.I. 2004). A "restrictive covenant `not only protects a property owner's investment but also increases the marketability of his home.'" Id. (quoting Farrell v.Meadowbrook Corp., 111 R.I. 747, 750, 306 A.2d 806, 808 (1973)). "[S]ince a property owner's purchase is sometimes motivated by the presence of such a restriction, the owner `should have some assurance that the restriction will be fairly and faithfully applied.'" Id. (citing same).
This case must be decided "on an ad hoc basis because each case presents `such a wide spectrum of differing circumstances' . . . and because `the specific effects of applying restrictions can vary, depending on the land and covenants involved.'" Id. at 842-43 (internal citations omitted); see also RidgewoodHomeowners Assoc., 813 A.2d at 971 (stating "cases involving the interpretation of restrictive covenants must be decided on a case-by-case basis"). This Court "must construe the terms of [the] restrictive covenant `in favor of free alienability of land while still respecting the purposes for which the restriction was established.'" Martellini, 847 A.2d at 843 (citations omitted). "[W]hen the limitation in issue is unambiguous, restrictive covenants are to be strictly construed." Id. Furthermore, the court shall "not . . . seek ambiguity where none exists but rather we will effectuate the purposes for which the restriction was established." Id. (citing Mignacca, 813 A.2d at 972). "[A]s in statutory construction, these words should be given their plain and ordinary meaning unless a contrary intent is discernable from the face of the instrument." Id.
There is no factual dispute that the deeds contain the restrictive covenant language stated above, with the exception of the deeds received by Defendants D'Olivo and Mowry. As to all others, the restrictive language appears and must be given effect based on its plain and ordinary meaning. Martellini,847 A.2d at 843. The clear purpose behind such a restrictive covenant is the continued existence of the dam without burdening a single property owner with its maintenance. Due to the importance of the Pond and the numerous benefits derived from it, the original grantor likely intended that as parcels were divided and transferred, all those who derived benefit from the Pond would contribute to its continued existence through the upkeep of the dam. Since there is no dispute as to the existence of the restrictions in said deeds, there is no material fact that could change the legal applicability of the restrictive covenants. Additionally, nothing in the language of the restrictive covenant burdens the free alienability of land. See id. Thus, summary judgment is appropriate in this case at least as far as all Defendants except D'Olivo and Mowry are concerned.
As to Defendants D'Olivo and Mowry, there does appear to be some issue of material fact with regard to whether they do or do not in fact have any frontage on the Pond. They state in their memorandum that the "property lies partially under the Pond and partially near the Pond, but these two portions . . . are separated from the landward rim of the Pond . . . by a narrow two-foot strip of land belonging to an adjacent owner. The only point at which their property touches the Pond is at the dam. . . ." (D'Olivo Memo. at 10-11.) It seems strange that a lot would have land area both under the water in the Pond and on land adjacent to the Pond, but with said portions being separated by a 2 foot wide swath of land owned by another. The land does abut the actual dam itself, however.
A factual question that may arise here is whether these Defendants (D'Olivo and Mowry) derive enjoyment or benefit from the Pond. One could say they derive benefit from the existence of the dam, and should therefore pay for its upkeep. Another question would be whether this alleged 2 foot wide portion of land actually restricts Defendants' use of the Pond, etc. As to all other Defendants, however, there can be no question that they derive some benefit from the Pond,[1] and thus, it is appropriate that they be legally burdened to pay for the continued existence of the Pond through the maintenance of the dam which created the Pond in the first place. Such a notion comports with "a general plan or scheme for the improvement of the property and its consequent benefit. . . ." Bessette v.Guarino, 85 R.I. 188, 192-93, 128 A.2d 836, 841 (1957). Where "reciprocal and mutual rights and obligations of all the grantees" exists, such mutuality of benefits and burdens require the enforceability of restrictive covenants. See id. at 195, 842-43.
Additionally, a covenant will "touch and concern" the land when it is "so related to the land as to enhance its value and confer a benefit upon it, or conversely, impose a burden on it." 20 Am.Jur. 2d Covenants §§ 15, 19. "Covenants which pertain to waters and ditches generally run with the land." 20 Am. Jur. 2dCovenants § 27. Since the covenant in question deals with those owners who have frontage on the Pond, and confers mutuality of benefits and burdens on said owners, the restrictive covenant in question runs with the land and binds all successors in the chain of title. Ridgewood Homeowners Assoc., 813 A.2d at 971 (holding restrictive covenants intended to run with land where benefit of and limitation on all future owners of land in subdivision);see Ebbe v. Senior Estates Golf Country Club, 657 P.2d 696,702 (Ore. 1983) (citing similar cases); see also Bessette,85 R.I. at 192-95, 128 A.2d at 841-43.
Additionally, Plaintiffs contend that of the three situations which require work be undertaken, two have been satisfied. Though the majority of lot owners did not vote that such work was needed, the DEM, a governmental agency, required repair to the dam after its inspection and the repair was recommended by Pare, "a suitable engineering firm." Thus, the covenant triggered a mandatory obligation of all lot owners with frontage to contribute on a pro rata and equal basis to the maintenance of the dam. This requirement did not terminate on a date specified in the deeds because it appeared below the section stating that the termination date applied to the "above restrictions and covenants." (Termination date appeared in paragraph 20 and restrictive covenant for maintenance of dam appeared in paragraph 24.) Thus, any further restrictions, of which there were others, found below said termination language, were clearly intended to have no such termination date.
Though it does not appear in deeds either before or after, the restrictive covenant does appear in a 1986 deed. Defendants D'Olivo and Mowry allege scrivener's error because an adjacent parcel was conveyed at the same time, which did have Pond frontage, and the deeds are identical in every way except for the property description attached at the end of the documents. As to the alleged scrivener's error, there is no actual evidence before this Court on that issue. Defendants D'Olivo and Mowry have merely presented speculative, circumstantial evidence. This issue would need a more detailed title search in order to discover whether the chain of title ever did contain such a restriction on their property. If D'Olivo and Mowry's title showed such a restriction earlier, rather than only once in the middle of the chain of title, then they too would be subject to a covenant which runs with the land and binds them. However, it is unclear that such covenant appeared prior to 1986.[2]
 CONCLUSION
Defendants (except D'Olivo and Mowry) rely on arguments as to why the restrictive covenant does not apply, but have failed to bring to this Court's attention any material facts in question that would prevent the grant of summary judgment. Based on the lack of disputed material facts, this Court hereby grants partial summary judgment in favor of the Plaintiffs, with respect to all Defendants. Defendants D'Olivo and Mowry are excepted from this summary judgment order because questions of material fact are present in connection with the claims against them. Against the other Defendants, summary judgment is afforded on the issue of liability relative to paragraph one of the Prayers for Relief in the Amended Declaratory Judgment Complaint.
Specifically the Court grants Plaintiffs' request for a declaratory judgment that all defendants (other than Ms. D'Olivo and Ms. Mowry) have a legal obligation to share the cost of the maintenance or repair of the Dam on Yonker Mill Pond. Defendants' motion for summary judgment is denied. Plaintiffs shall submit any necessary orders.
[1] Another provision in the deed states that "the grantors and grantees mutually agree that conveyed with the subject property is the right to use in common with the other lot owners abutting Yawgoo Mill Pond, the . . . Pond for all water related activities including but not limited to ice skating, swimming, boating and the like. . . ." Thus, there is no question that all Pond abutters derive legal benefit from the Pond.
[2] If it did, then summary judgment against D'Olivo and Mowry would seem appropriate.